**Billy M. FLYNN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–4052.**

Court of Appeals of Alaska.

March 12, 1993.

Andrew Haas, Asst. Public Defender, Bethel, and John B. Salemi, Public Defender, Anchorage, for appellant.

Cynthia L. Herren, Asst. Atty. Gen., Office of Spec. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Following a trial presided over by Superior Court Judge Dale O. Curda, Billy Flynn was convicted by a jury of one count of sexual abuse of a minor in the first degree, in violation of AS 11.41.434(a)(1). Flynn appeals, alleging, among other things, that the superior court erred in allowing a police officer to express his opinion about the truthfulness of Flynn's confession. We reverse.

Flynn's conviction stemmed from his alleged abuse of C.N., the six-month-old child of E.N. Some time in November of 1989, Flynn babysat at E.N.'s home in Bethel while E.N. played bingo. E.N. claimed that, when she changed C.N.'s diaper the next morning, C.N.'s vagina appeared to be bruised; a drop of blood and some gray, "skin-like" matter were on C.N.'s diaper. E.N. claimed that she told a friend what she had observed, but she took no further action at the time. Approximately one month later, E.N. spoke about the incident to another friend, who advised her to take C.N. to the hospital for examination. The examinations indicated that C.N. may have been sexually penetrated: the child's vagi-

nal opening was larger than usual and her hymen was absent. The police were contacted and informed that Flynn was suspected of sexually abusing C.N.

Several months later, on March 4, 1989, Bethel Police Sergeant John Bilyeu learned that Flynn was being held at the jail for a twelve-hour period of protective custody due to intoxication. Near the end of the twelve-hour holding period, Bilyeu contacted Flynn and drove him to the police station; in the presence of another officer, Bilyeu advised Flynn of his *Miranda*[1] rights and questioned him about the alleged abuse. Bilyeu recorded the questioning. During the initial stages of the interrogation, Flynn repeatedly denied abusing C.N. Bilyeu eventually interrupted the questioning, evidently to take a break for coffee. He turned his recorder off during the break. When questioning resumed approximately ten minutes later, Flynn confessed. He told Bilyeu that he had inserted his finger and his penis into C.N.'s vagina. Flynn's prosecution for first-degree sexual assault followed.

Flynn did not testify at trial. His defense counsel, however, adopted a strategy aimed at convincing the jury that Flynn had confessed falsely due to the coercive circumstances surrounding his interrogation. On cross-examination of Bilyeu, Flynn's counsel attempted to further this strategy by pointing out Flynn's initial denial of abuse and by emphasizing that Flynn's change of heart had occurred during the unrecorded break in the interrogation.

In response, on redirect examination, the state sought to establish that nothing coercive or unusual had occurred during Flynn's interrogation. As part of this line of inquiry, the state asked Bilyeu if it was unusual for suspects who initially deny committing a crime to confess eventually. Flynn did not object to the question, and Bilyeu responded that it was not unusual.

The state then sought to follow up by asking Bilyeu whether, in his experience, such confessions were reliable or unreliable. Flynn objected, arguing that the ques-

tion called for an opinion on the truthfulness of Flynn's confession and was beyond the scope of Bilyeu's expertise. The court overruled Flynn's objection. After calling on the state to lay a foundation as to Bilyeu's expertise in interrogating suspects, the court allowed the state to inquire how reliable such confessions were. Over Flynn's renewed objection, Bilyeu ultimately testified that, "In my experience, as to date, I have yet to have an innocent person confess."

Flynn contends on appeal that the trial court erred in admitting this testimony. Flynn argues that Bilyeu was in effect allowed to tell the jury, as an expert witness, that Flynn's confession was truthful. We agree that the admission of this testimony amounted to error.

■ In cross-examining Bilyeu about Flynn's interrogation, Flynn's attorney evidently attempted to suggest that Flynn's initial denial of guilt was an unusual occurrence—an occurrence that rendered his subsequent confession unreliable. To refute this suggestion, the state was certainly entitled to establish, on redirect examination, that it is not unusual for a confession to follow an initial denial of responsibility. *Cf. Shepard v. State,* 847 P.2d 75 (Alaska App.1993); *Rodriguez v. State,* 741 P.2d 1200, 1203–05 (Alaska App.1987). Hence, the trial court did not err in allowing the state to ask Bilyeu whether such confessions were unusual—and, indeed, Flynn did not object to the state's inquiry in this regard.

■ The state entered far more dangerous territory, however, when it went on to elicit expert testimony from Bilyeu concerning the truthfulness of the confessions he had heard throughout his career. Bilyeu's testimony that he had "yet to have an innocent person confess" was tantamount to a statement of his professional opinion that Flynn had confessed truthfully and was therefore guilty as charged. Although Bilyeu may not have said in so many words that he believed Flynn guilty, we find it inconceivable that reasonable

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

jurors listening to Bilyeu's testimony in the context of Flynn's trial would have understood him to mean anything else.

By allowing this testimony to be admitted, the trial court effectively enabled Bilyeu to perform the role of a "human polygraph." This court has consistently noted the inappropriateness of such evidence. *See, e.g., Thompson v. State,* 769 P.2d 997, 1003–04 (Alaska App.1989) (citing cases); *see also Shepard,* 847 P.2d at 80 n. 2 & 80– 81; *Cox v. State,* 805 P.2d 374, 376–78 (Alaska App.1991); *Haakanson v. State,* 760 P.2d 1030, 1035–37 (Alaska App.1988). Having reviewed the record, "we are left with a definite and firm conviction ... that the trial court erred in its ruling." *Dura Corp. v. Harned,* 703 P.2d 396, 409 (Alaska 1985). The court thus abused its discretion in admitting the disputed testimony. *Id.*

■ Flynn's confession was central to the prosecution's case at trial; yet the circumstances surrounding the confession rendered Flynn's claim of coercion at least arguably plausible. Bilyeu's improperly admitted testimony could thus have had a tremendous effect on the jury's verdict. Under the circumstances, we are unable to conclude that the error was harmless. *Love v. State,* 457 P.2d 622, 629–32 (Alaska 1969). Accordingly, Flynn's conviction must be reversed.

■ Flynn has also argued that the trial court erred in denying his motion for a judgment of acquittal based on insufficient evidence. Even though we have decided that reversal is necessary on other grounds, we must resolve the claim of insufficient evidence, since a retrial would be barred if Flynn prevailed on this issue.

■ Flynn's claim of insufficient evidence was based on the contention that the state had failed to present evidence establishing his age. To prove Flynn's guilt of sexual abuse of a minor in the first degree under AS 11.41.434(a)(1), the state was required to establish, among other elements, that Flynn was "16 years of age or older[.]" In its case-in-chief, the state failed to present any specific evidence of Flynn's age. Flynn argued below, and he argues

here, that the state's failure should have resulted in a judgment of acquittal.

The Alaska Supreme Court's decision in *Torres v. State,* 521 P.2d 386, 388 (Alaska 1974), establishes that, when the age of the accused is at issue, the jury need not hear direct evidence of age but may instead rely on the appearance of the accused at trial, in combination with reasonable inferences arising from testimony on other issues. *Torres* is consistent with rulings from courts of many jurisdictions. Some have found that the jury's ability to observe the accused at trial is in itself a sufficient basis for denial of a motion for a judgment of acquittal. *See, e.g., Weaver v. State,* 568 So.2d 309, 311–12 (Ala.Crim.App.1989) (accused's age may be established by either direct or circumstantial evidence even when accused's age is a material element of the crime charged); *Jewell v. Commonwealth,* 8 Va.App. 353, 382 S.E.2d 259, 261 (1989) (physical appearance alone may be used to conclude that a defendant is older than the minimum age required to be proven if the trial court determines that the fact finder can make this determination beyond a reasonable doubt).

Others have held that the jury may properly rely on its observation of the accused in combination with other circumstantial indicators of age. *See, e.g., State v. Zihlavsky,* 505 So.2d 761, 765 (La.App.1987) (lack of direct evidence did not preclude conviction when defendant was open to jury view and additional circumstantial proof of defendant's age was present in the record); *Commonwealth v. Pittman,* 25 Mass.App.Ct. 25, 514 N.E.2d 857, 859 (1987) (when proof of age is necessary to establish the offense and the record does not reflect that the person whose age must be proved falls into a marked extreme, there must be some evidence in addition to physical appearance).

Courts taking this latter approach have found a broad array of circumstantial evidence minimally sufficient to avoid a judgment of acquittal: evidence that the accused purchased beer or cigarettes, was friends with another adult, or participated in adult activities, and testimony referring

to the accused as "a man" or to the accused's advanced age. *See, e.g., State v. Thompson*, 365 N.W.2d 40, 43 (Iowa App. 1985); *Zihlavsky*, 505 So.2d at 765; *State v. Lauritsen*, 199 Neb. 816, 261 N.W.2d 755, 757 (1978); *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879, 887 (1982).

In the present case, Flynn argues that his presence at trial should not alone have justified submitting the issue of his age to the jury. In advancing this argument, Flynn implicitly asserts that his presence at trial amounted to the only circumstantial evidence from which the jury could have inferred that he was sixteen years of age or older. However, Flynn's designation of a limited appellate record—one that includes only narrowly selected portions of the trial transcript—renders it virtually impossible for this court to gauge the full scope of the circumstantial evidence that might have supported the conclusion that Flynn was at least sixteen years of age.

Nevertheless, even the limited portions of the transcript included in the record disclose that the jury heard a substantial amount of evidence implying that Flynn was an adult. For example, Bilyeu testified that the day before the disputed interrogation, Flynn was picked up by the authorities because he was intoxicated; he was thereafter detained for a twelve-hour period of protective custody. Bilyeu further testified that when he questioned

Flynn, he assumed Flynn had sobered up during his twelve hours in protective custody, just like any other person would have. Bilyeu also described Flynn as a "short statured man," and he went on to provide details of Flynn's late night interrogation at the police station, referring to Flynn as a criminal suspect, not as a suspected juvenile delinquent.

Because this testimony, in its entirety, unmistakably indicates that Flynn acted like an adult and was treated as such by the authorities who dealt with him, it strongly supports the inference that Flynn was sixteen years of age or older. Even assuming no other circumstantial evidence reflecting on Flynn's age was presented in the course of trial, Bilyeu's testimony, coupled with Flynn's presence during the proceedings, was sufficient to withstand Flynn's motion for a judgment of acquittal and to warrant submission of his case to the jury.

For the foregoing reasons, the conviction is REVERSED.[2]

---

**2.** Since reversal is necessary, we need not decide Flynn's remaining claims. However, because further prosecution is not barred, we provide the following observations for guidance in the event of a retrial. Flynn has claimed on appeal that the superior court erred in denying his motion to suppress his confession. One of the bases Flynn relied on in seeking suppression was the claim that the police violated *Stephan v. State*, 711 P.2d 1156 (Alaska 1985), by failing to record the entirety of his interrogation. In its order denying Flynn's suppression motion, however, the superior court did not expressly rule on this issue.

Moreover, although the order denying Flynn's motion to suppress stated the superior court's legal conclusions on Flynn's other suppression arguments, the order made no factual findings. Alaska Rule of Criminal Procedure 12(d) requires, in relevant part, that "[w]here factual issues are involved in determining a motion to suppress evidence, the court shall state its essential findings on the record." Ordinarily, in the absence of express findings, we simply rely on

the assumption that the trial court resolved all factual issues in favor of the prevailing party. *Beagel v. State*, 813 P.2d 699, 704 (Alaska App. 1991). This assumption, however, is problematic here.

The fact that the superior court ruled in Flynn's favor rather than in favor of the state on the threshold issue of whether Flynn's interrogation was custodial renders the accuracy of the normal assumption questionable in the context of this case. Furthermore, Flynn's suppression motion questioned the voluntariness of his confession, an issue ultimately requiring independent review on appeal; a lack of express findings resolving all disputed factual issues relating to the circumstances surrounding a confession substantially impairs this court's ability to render a meaningful, independent decision on the issue of voluntariness. *See Johnson v. State*, 631 P.2d 508 (Alaska App.1981).

If the state seeks a retrial and Flynn renews his motion to suppress, the superior court should enter express findings of fact and conclusions of law resolving all disputed issues.