OPINION

Per Curiam:

A jury found appellant Clyde Cordova, Jr., guilty of second-degree murder with the use of a deadly weapon. Cordova contends that the jury instruction defining implied malice was erroneous, the enhancement for use of a deadly weapon does not apply in this case, and a witness for the State improperly testified regarding Cordova’s veracity.

FACTS

Early in the morning on March 11, 1997, there was a knock at the door of Richard Harding’s apartment on Kietzke Avenue in Reno. Harding was present with other residents of the apartment and some visitors. Harding approached the door and asked, “Who is it?” Several bullets were then fired through the door. Two struck Harding, and he died within a short time. Police recovered nine nine-millimeter shell casings outside the apartment.
A number of people had visited the apartment that night, including Cordova, and alcohol and marijuana had been consumed. The next day, after questioning Cordova, police obtained a warrant and searched the apartment of Damian Hodson. They found three handguns, including the nine-millimeter pistol that was used to kill Harding. Hodson told police that he had loaned the gun to Cordova the night before.
After further questioning, Cordova confessed to police that he had obtained the pistol from Hodson, gone to the victim’s apartment, knocked on the door, and then fired through it. Cordova had been drinking alcohol and felt that the occupants of the apartment had insulted him earlier.
The jury found Cordova guilty of second-degree murder with the use of a deadly weapon. The district court entered judgment accordingly and sentenced him to two consecutive terms of life imprisonment with the possibility of parole.

*666
DISCUSSION

The jury instruction defining implied malice

Jury instruction number 14 stated: “Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.” Cordova claims that this instruction was improper because the word “shall” creates an impermissible mandatory presumption, relieving the State of its burden of proof.
Cordova failed to object to the instruction below. Failure to object during trial generally precludes appellate consideration of an issue. Rippo v. State, 113 Nev. 1239, 1259, 946 P.2d 1017, 1030 (1997). Despite such failure, this court has the discretion to address the assigned error if it was plain and affected Cordova’s substantial rights. See NRS 178.602 (“Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.”). No such error occurred here. The instruction uses the language provided in NRS 200.020(2), and this court has upheld use of the instruction where the jury is properly instructed on the presumption of innocence and the State’s burden to prove beyond a reasonable doubt every element of the crime charged. See Doyle v. State, 112 Nev. 879, 900-02, 921 P.2d 901, 915-16 (1996). The jury was so instructed here. Therefore, no error occurred at all.
We take this opportunity, however, to clarify that nothing prevents district courts from instructing juries that malice ‘ ‘may be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.”[1] The legislature has not prohibited any definition of malice other than that set forth in NRS 200.020, as it has done in regard to defining reasonable doubt. See NRS 175.211(2) (providing that no definition of reasonable doubt other than the one in NRS 175.211(1) may be given to juries). Moreover, the use of “may” in the instruction is preferable because it eliminates the issue of a mandatory presumption, raised by Cordova and many *667 appellants challenging murder convictions, and avoids the concerns addressed in Doyle, which prompted this court to look to other instructions to determine if the State’s burden of proof had been properly articulated. See Byford v. State, 116 Nev. 215, 248 n.11, 994 P.2d 700, 722 n.11 (2000) (Maupin, J., concurring).

Enhanced punishment for use of a deadly weapon

Cordova argues that the sentence enhancement imposed for his use of a deadly weapon was improper because use of a deadly weapon was a necessary element of the crime he committed. He made this argument at his sentencing, and the district court rejected it. We conclude that the district court did not err.
NRS 193.165(1) provides for imposition of an additional, consecutive prison term equal to the term prescribed for a crime' when a deadly weapon is used to commit the crime. However, pursuant to NRS 193.165(3), this provision does not apply where the use of a deadly weapon “is a necessary element of such crime.’ ’
The jury in this case was instructed that if it found
beyond a reasonable doubt that the Defendant committed the offense of shooting or aiding or abetting the shooting by another into an occupied dwelling, and that it is a felony dangerous to human life, then you may return a verdict of guilty on the felony offense of Murder of the Second Degree.[2]
The jury returned a special verdict form showing that it found Cordova guilty of second-degree murder in the commission of a dangerous felony.
Because the jury found that he committed felony murder based on the predicate felony of shooting into an occupied dwelling, Cordova asserts that use of a deadly weapon was an element of the crime he committed. Therefore, he concludes, NRS 193.165(3) precludes the deadly weapon enhancement in his case.
The California Supreme Court considered this issue in People v. Hansen, 885 P.2d 1022 (Cal. 1994). In that case, the appellant was convicted of second-degree murder based on felony murder, *668 the predicate felony being discharging a firearm at an inhabited dwelling. Hansen, 885 P.2d at 1031. A California statute provided for an enhancement of a person’s sentence for using a firearm in the commission of a felony ‘ ‘ ‘unless use of a firearm is an element of the offense of which he or she was convicted.’ ’ ’ Id. (quoting Cal. Penal Code § 12022.5(a)). The court held:
The phrase “element of the offense” signifies an essential component of the legal definition of the crime, considered in the abstract. In the present case, the crime of which defendant was convicted was second degree murder. The offense, considered in the abstract, does not include use of a firearm as an element. Second degree murder may be committed in a myriad of ways, some that involve use of a firearm, and others, such as stabbing, poisoning, or strangling, that do not involve use of this type of weapon. Under [the pertinent statute], the enhancement applies unless “use of a firearm is an element of the offense” and not merely the means by which the offense was committed or the factual predicate of a theory upon which the conviction was based.
Id. at 1031-32 (citations omitted); cf. State v. Olsen, 760 P.2d 603, 605 (Ariz. Ct. App. 1988) (“Appellant’s suggestion that the mandatory sentencing scheme did not apply because the elements of the crime included the ‘enhancer’ is not persuasive. Appellant confuses the elements of the crime with the mode of its commission.”).
We consider the reasoning in Hansen persuasive and applicable to NRS 193.165(3). NRS 193.165(3) precludes the weapon enhancement only if use of a deadly weapon is a ‘ ‘necessary element” of the crime committed. This language refers to, as stated by the California court, “an essential component of the legal definition of the crime, considered in the abstract.” In decreeing that a crime committed with the use of a deadly weapon should be punished more severely than one committed without such use, the Nevada Legislature did not intend to exclude felony murder whenever an element of the predicate felony was use of a deadly weapon. Cf. Hansen, 885 P.2d at 1032. On the contrary, we conclude that this is precisely the kind of situation for which enhanced punishment is intended.

Comments by a witness on the veracity of the appellant

Cordova contends that a witness for the prosecution improperly commented on the truthfulness of Cordova’s pretrial statement to police. Cordova did not object to the testimony in question, so again we review for plain error affecting Cordova’s substantial rights, pursuant to NRS 178.602. We conclude that admission of the testimony was not plainly erroneous or prejudicial to Cordova.
*669 Cordova’s only defense was to raise the possibility that Hodson, the friend who loaned Cordova the murder weapon, accompanied Cordova to the victim’s apartment and fired the shots and that Cordova falsely accepted the blame for his friend. Hodson had fled and gone into hiding sometime after the crime. During cross-examination of the detective who took Cordova’s confession, defense counsel asked if the detective had “been involved in investigations where individuals in serious felony cases, even shooting cases, have taken responsibility for shooting to cover someone else?” The detective answered that he had. On redirect examination, the prosecutor asked the detective, ‘ ‘And in all of the murder investigations which you have ever conducted, have you ever had a person confess to a murder they did not commit?” The detective answered that he never had, other than persons who were mentally disturbed and claimed responsibility for a murder that never occurred. The prosecutor asked if Cordova had seemed mentally disturbed, and the detective said no. The detective felt that Cordova was “sincere” when he said he committed the crime by himself.[3]
Cordova contends that the detective improperly testified on Cordova’s veracity and guilt under Nevada case law. An expert may not comment on a witness’s veracity or render an opinion on a defendant’s guilt or innocence. See Lickey v. State, 108 Nev. 191, 196, 827 P.2d 824, 827 (1992); Winiarz v. State, 104 Nev. 43, 50-51, 752 P.2d 761, 766 (1988). This case law is not precisely on point here. The detective did not testify as an expert, nor did he comment on Cordova’s veracity as a witness. However, the detective’s opinion on the truthfulness of Cordova’s confession did implicate the ultimate question of guilt or innocence, and we recognize the possibility that jurors ‘ ‘may be improperly swayed by the opinion of a witness who is presented as an experienced criminal investigator.” Sakeagak v. State, 952 P.2d 278, 282 (Alaska Ct. App. 1998).
More apposite is Flynn v. State, 847 P.2d 1073 (Alaska Ct. App. 1993), which Cordova cites. In that case the court concluded *670 that a police sergeant’s expert testimony “that he had ‘yet to have an innocent person confess’ was tantamount to a statement of his professional opinion that [the appellant] had confessed truthfully and was therefore guilty as charged.” Flynn, 847 P.2d at 1075. The appellant had objected unsuccessfully to the testimony. Id. The appellant’s ‘ ‘confession was central to the prosecution’s case at trial; yet the circumstances surrounding the confession rendered [the appellant’s] claim of coercion at least arguably plausible.” Id. at 1076. The appellate court concluded that the trial court had abused its discretion in admitting the testimony. Id.
This case still differs from Flynn in several ways. First, Cordova’s counsel initiated inquiry into the detective’s experience regarding false confessions. Thus, Cordova opened the door to the prosecutor’s questions on the subject. Cf. Colon v. State, 113 Nev. 484, 493, 938 P.2d 714, 720 (1997) (prosecutor’s reference to appellant’s refusal to cooperate with police not reversible error where appellant’s counsel raised the issue), limited on other grounds by Salgado v. State, 114 Nev. 1039, 1042, 968 P.2d 324, 326 (1998). Second, although Cordova implied that he confessed falsely to take the blame for Hodson, the circumstances surrounding the confession do not render this implication plausible. And third and fourth, Cordova did not object to the prosecutor’s questions, and the detective did not testify as a qualified expert. We conclude that if any error occurred here, it was not plain error and did not affect Cordova’s substantial rights.

CONCLUSION

None of Cordova’s assignments of error warrants relief. We affirm his conviction and sentence.

This court has never addressed this matter before. In Witter v. State, 112 Nev. 908, 917 n.3, 921 P.2d 886, 893 n.3 (1996), overruled on other grounds by Byford v. State, 116 Nev. 215, 994 P.2d 700 (2000), we approved an instruction which stated that malice “may” be implied. However, we did so apparently assuming that the instruction used “shall,” as provided in NRS 200.020(2) and approved in Guy v. State, 108 Nev. 770, 777 & n.2, 839 P.2d 578, 582 & n.2 (1992). See Witter, 112 Nev. at 918, 921 P.2d at 893. In Witter and Guy, the use of “shall” in defining implied malice was not at issue; rather, the court considered whether the instruction adequately distinguished express malice and implied malice. See id.; Guy, 108 Nev. at 777, 839 P.2d at 582.

This instruction was drafted by Cordova’s counsel based on Sheriff v. Morris, 99 Nev. 109, 659 P.2d 852 (1983), which discusses the requirements for second-degree felony murder. However, the instruction misstated Morris, which requires a predicate felony to be “inherently dangerous,” not simply “dangerous,” to human life. See Morris, 99 Nev. at 115-19, 659 P.2d at 857-59. We conclude that any error was insignificant because the felony of discharging a firearm into an occupied building is inherently dangerous to human life. Cf. People v. Hansen, 885 P.2d 1022, 1026-27 (Cal. 1994). Moreover, the error has not been raised on appeal and is attributable to Cordova in the first place.

In response to other questions by the prosecutor, the detective opined that Hodson had gone into hiding because he did not want to testify against his friend, Cordova. Cordova complains that this opinion was improper, but he failed to object below, and he provides no authority to this court in support of his claim. We therefore decline to consider it. See Jones v. State, 113 Nev. 454, 468, 937 P.2d 55, 64 (1997) (a contention unsupported by specific argument or authority should be summarily rejected on appeal). It should be noted that another possible motive for Hodson’s disappearance was that he faced likely felony charges because police had found more than a pound of marijuana at his apartment when they recovered the murder weapon.