129 Nev., Advance Opinion 20

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JOSEPH TRUESDELL,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 58628<br><br>**FILED**<br><br>APR 04 2013 |

Appeal from a judgment of conviction, pursuant to a jury verdict, of invasion of the home in violation of a temporary protection order. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

Affirmed.

Philip J. Kohn, Public Defender, and Howard Brooks and Sharon G. Dickinson, Deputy Public Defenders, Clark County,
for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District Attorney,
for Respondent.

---

BEFORE GIBBONS, PARRAGUIRRE and DOUGLAS, JJ.

## OPINION

By the Court, GIBBONS, J.:

In this appeal, we consider whether a party may collaterally attack a temporary protective order in a separate criminal proceeding for violation of that order. We conclude that a party must initially challenge the validity of a temporary protective order under NRS 33.080(2) before the court that issued the order. Further, the party may not collaterally

SUPREME COURT
OF
NEVADA

(O) 1947A

5/31/13: Corrected per Order. CJ

13-09837

attack the order's validity in a separate proceeding. In light of this, and because all of appellant's other arguments on appeal lack merit, we affirm the district court's judgment of conviction.

## FACTS AND PROCEDURAL HISTORY

Appellant Joseph Truesdell lived in an apartment with Mika Bennett and her two children in Las Vegas. The apartment lease did not list Truesdell as a resident of the address. On October 26, 2010, Truesdell struck Bennett during an argument. He was arrested and jailed and then later pleaded no contest to the domestic violence charges against him.

On October 28, 2010, Bennett contacted SafeNest, a domestic violence advocate organization, to obtain a temporary protective order (TPO) against Truesdell. The same day, the district court granted a five-day TPO against Truesdell based on a typed application that contained the details Bennett relayed to SafeNest but did not state who filled out the application or how the district court received it. The TPO required Truesdell to stay at least 100 yards away from Bennett's apartment but allowed him to return a single time with a police officer to collect his personal belongings.

Corrections Officer Theodore Wylupski served Truesdell with the TPO at the Clark County Detention Center the same day. On November 1, 2010, while the TPO was still valid, Truesdell was released from jail and went back to the apartment without a police officer. Despite the TPO, Bennett allowed Truesdell to enter the apartment, where they argued for an hour and a half. Truesdell then left at Bennett's request.

On November 2, 2010, Truesdell returned to the apartment and started knocking on the door. Bennett called 911. Truesdell then began kicking the door. Bennett never gave Truesdell permission to enter the apartment and did not unlock the door. Eventually, he kicked in the

door and walked Bennett into the bedroom where her two children slept, but hastily left a few minutes later after several neighbors approached the apartment. Thereafter, police officers found and arrested Truesdell.

On November 4, 2010, the State filed a complaint against Truesdell, alleging he committed one count of invasion of the home. After the preliminary hearing, where Bennett testified that she called SafeNest to obtain the TPO against Truesdell, the State filed an information against Truesdell alleging he committed invasion of the home in violation of a TPO.

On the first day of Truesdell's three-day trial, he requested a continuance in order to litigate the validity of the TPO. Truesdell claimed that he was unaware of the TPO Application until a day or two before trial, when the State provided him with a copy of the TPO application. Based on that application, Truesdell argued the procedure for obtaining a TPO by phone violated his due process rights. The district court denied his motion, but told the parties they could address the issue prior to sentencing, as the constitutionality of a TPO was a question of law.

During the trial, Bennett testified about the events of November 2, 2010, and identified Truesdell as the one who kicked down her door. Officer Wylupski also testified that he did not specifically recall serving Truesdell with the TPO, but was able to identify his signature on a proof of service that also contained Truesdell's signature and fingerprint. Officer Wylupski also testified to the general procedure he follows when serving a person with a TPO. In its closing argument, the State argued that the jury did not have to find that Truesdell understood the TPO in order to determine whether he committed home invasion in violation of a TPO. Instead, the State asserted that the jury only had to find that

Truesdell willfully violated the TPO. The district court allowed these comments over Truesdell's objections. Following the closing arguments, the jury found by special verdict that Truesdell was guilty of invasion of the home in violation of a TPO.

After the trial, Truesdell did not file a motion with the district court regarding the TPO's validity and did not address the issue during his sentencing. The district court imposed a 12- to 48-month sentence on Truesdell for the home invasion charge and a concurrent 12- to 36-month sentence for the violation of the TPO. The district court also ordered Truesdell to pay $500 to the Indigent Defense Fund. He now appeals.

## DISCUSSION

Because a party cannot collaterally attack a TPO in a separate criminal proceeding and because the other issues raised by Truesdell lack merit, we affirm his conviction.

### Truesdell may not collaterally attack the TPO's validity in a subsequent prosecution for violating the TPO

Truesdell argues that SafeNest's procurement of the TPO on Bennett's behalf, after speaking with her by telephone, violates the procedure set forth in NRS 33.020(5) and violates his due process rights. The interpretation of a statute is a question of law that we review de novo. Mendoza-Lobos v. State, 125 Nev. 634, 642, 218 P.3d 501, 506 (2009). We also review issues relating to the constitutionality of a statute de novo. State v. Hughes, 127 Nev. ___, ___, 261 P.3d 1067, 1069 (2011).

Whether a party may collaterally attack the validity of a TPO in a subsequent criminal proceeding for violation of that TPO is a question of first impression in Nevada. We take this opportunity to clarify that a party may not collaterally attack the validity of a TPO in a subsequent criminal proceeding based on violation of the TPO.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

Many jurisdictions follow the collateral bar rule, which precludes a party from collaterally attacking a protection order in a later proceeding for violating the order, even to question the constitutionality of the statute that authorized the protection order. See State v. Chavez, 601 P.2d 301, 302 (Ariz. Ct. App. 1979) (indicating that parties could not collaterally attack the constitutionality of an injunction by an appeal from their convictions of criminal contempt for violating that injunction); State v. Grindling, 31 P.3d 915, 919 (Haw. 2001) (concluding that the defendant could not collaterally attack the underlying factual basis of a temporary restraining order in a later criminal proceeding for violating the order); Wood v. Com., 178 S.W.3d 500, 512-13 (Ky. 2005) (concluding that appellant could not collaterally attack the validity of an emergency protective order in a later proceeding for violating that order and this preclusion did not violate appellant's due process rights because a statute allowed appellant to directly challenge the order); State v. Small, 843 A.2d 932, 935 (N.H. 2004) ("'The general underlying premise [against collateral attacks] is that a person subject to an injunctive order . . . should be bound to pursue any objection to the order through the constituted judicial process available for that purpose.'" (quoting State v. Grondin, 563 A.2d 435 (N.H. 1989))); City of Seattle v. May, 256 P.3d 1161, 1163-64 (Wash. 2011) (concluding that the collateral bar rule prohibited a defendant from challenging the validity of permanent domestic violence order in a later prosecution for violation of that order, unless the defendant could show that the order was void).

Other courts, however, have concluded that such collateral attacks on a court order are permitted in certain circumstances. See People v. Gonzalez, 910 P.2d 1366, 1373-76 (Cal. 1996) (interpreting

California's criminal contempt statute and determining that a person may challenge the constitutional validity of a court order in a later contempt proceeding); Gilbert v. State, 765 P.2d 1208, 1209-11 (Okla. Crim. App. 1988) (addressing the defendant's vagueness arguments on a domestic violence statute and due process claims relating to the issuance of an emergency protective order in an appeal from an order revoking the defendant's suspended sentences based on continued violations of the order); State v. Orton, 904 P.2d 179, 182 (Or. Ct. App. 1995) (concluding that the collateral bar doctrine could not preclude the defendant from raising issue of whether statute pertaining to a violation of a protection order was unconstitutionally vague because the issue was not susceptible to litigation during the proceeding when the order was issued).

Although Nevada law allows a party to collaterally attack prior convictions that are offered by the State to prove the defendant is a habitual criminal or to enhance a charge to a felony, see Hobbs v. State, 127 Nev. ___, ___, 251 P.3d 177, 181-82 (2011) (reviewing validity of defendant's prior misdemeanor convictions that were used to enhance charged offense to a felony under NRS 200.485); Arajakis v. State, 108 Nev. 976, 982-83, 843 P.2d 800, 804 (1992) (examining defendant's claims relating to the validity of prior convictions used to adjudicate and sentence defendant as habitual criminal), a collateral attack on a court order in a later proceeding that involves a violation of that order presents a different set of circumstances.

First, in certain circumstances involving an offense enhancement, the validity of the prior conviction is a necessary element that the State had to prove in order to enhance an offense. See, e.g., NRS 200.485(4) (requiring the State to prove facts of a prior offense for battery

constituting domestic violence in order for offense enhancement to be imposed). In contrast, the validity of a TPO is not an element that the State must prove for the crime of home invasion or for a sentence enhancement for the violation of a TPO. See NRS 193.166(1)(a); NRS 205.067(1).

Second, the enhancement cases do not implicate the policy behind the collateral bar rule—that a court order must be obeyed so long as it remains in effect, and therefore, disobedience results in a violation of the order. See Wood, 178 S.W.3d at 512-13; Small, 843 A.2d at 935. Nevada law provides a means for a party to challenge a TPO issued against him or her in the court that issued the order. See NRS 33.080(2) ("On 2 days' notice to the party who obtained the temporary order, the adverse party may appear and move its dissolution or modification, and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require."). Until the order is dissolved or modified or expires by its terms, it must be obeyed.

Therefore, we conclude a party must challenge a TPO's validity before the court that issued the order and may not collaterally attack the TPO's validity in a subsequent prosecution for its violation. As Truesdell did not challenge the TPO in the issuing court, we cannot consider his arguments pertaining to the TPO's validity in this appeal.[1]

---

[1]Truesdell alleges that the district court abused its discretion in refusing to grant a continuance. He requested the continuance in order to investigate the constitutional issues that the TPO raised. However, because the issue of the TPO's validity was a question of law, we conclude Truesdell was not prejudiced by this action. See Higgs v. State, 126 Nev. ___, ___, 222 P.3d 648, 653 (2010) (explaining that in order to demonstrate a district court's abuse of discretion when denying a continuance, the

*continued on next page...*

<u>The other issues Truesdell raises on appeal also lack merit</u>

<u>Sufficient evidence existed to convict Truesdell of home invasion in violation of a TPO</u>

Truesdell claims that the State failed to prove beyond a reasonable doubt that he committed home invasion in violation of a TPO because (1) the TPO was invalid, (2) Bennett waived any claim of a TPO violation by allowing him to enter the apartment the previous night, and (3) the evidence does not support that Officer Wylupski served Truesdell with the TPO or that Truesdell understood the TPO's contents. We disagree and conclude that, viewing the evidence in the light most favorable to the prosecution, a rational juror could have been convinced of Truesdell's guilt beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>Middleton v. State</u>, 114 Nev. 1089, 1102, 968 P.2d 296, 306 (1998).

NRS 205.067(1) states, "A person who, by day or night, forcibly enters an inhabited dwelling without permission of the owner, resident or lawful occupant, whether or not a person is present at the time of the entry, is guilty of invasion of the home." A district court may impose a sentence enhancement for a TPO violation when an individual commits a felony in violation of a TPO "against domestic violence issued pursuant to NRS 33.020." NRS 193.166(1)(a).

Bennett obtained a five-day TPO against Truesdell on October 28, 2010, that prohibited him from being within 100 yards of the apartment. The proof of service, which contains Officer Wylupski's

---

*...continued*
challenging party must demonstrate the denial had a prejudicial effect on the case).

SUPREME COURT
OF
NEVADA

(O) 1947A

8

signature, as well as Truesdell's signature and fingerprint, demonstrates that an officer served Truesdell with the TPO. Officer Wylupski also testified as to the procedures that he generally follows when serving a person with a TPO. Truesdell did not challenge the validity of the TPO in the issuing court; and on November 2, 2010, prior to the TPO's expiration, he went to the apartment where Bennett was living and forcibly entered the apartment without permission in violation of the TPO. Based on this evidence, a rational trier of fact could have found the essential elements of home invasion in violation of a TPO beyond a reasonable doubt. See Middleton, 114 Nev. at 1102, 968 P.2d at 306.

Nevada's home invasion statute is constitutional

Truesdell also argues that NRS 205.067(1), the home invasion statute, is unconstitutionally vague because it does not contain an intent requirement and fails to state that a person must enter the home of another. We disagree and review for plain or constitutional error because Truesdell failed to object below. See Grey v. State, 124 Nev. 110, 120, 178 P.3d 154, 161 (2008). We will only find a criminal law void for vagueness when the statute fails to provide sufficient notice of the conduct that is prohibited or when the statute fails to provide definitive standards and results in arbitrary enforcement. State v. Hughes, 127 Nev. ___, ___, 261 P.3d 1067, 1069 (2011).

We have previously stated that invasion of the home is a general intent crime. Bolden v. State, 121 Nev. 908, 923, 124 P.3d 191, 201 (2005) (referring to home invasion as a general intent crime), receded from on other grounds by Cortinas v. State, 124 Nev. 1013, 1016, 195 P.3d 315, 317 (2008). Therefore, the statute contains an intent requirement. Furthermore, the plain language of NRS 205.067(1) requires that a person

"forcibly enters an inhabited dwelling without permission of the owner, resident or lawful occupant." Therefore, a person cannot commit the crime of home invasion by forcibly entering his or her own home if that person is a lawful occupant or resident of the home. NRS 205.067(1) consequently provides sufficient notice of the conduct that it prohibits and does not encourage arbitrary enforcement.[2]

### The district court did not abuse its discretion by refusing to approve Truesdell's jury instructions

Truesdell argues that the district court abused its discretion by denying his proposed jury instructions for trespass and malicious destruction of private property as lesser included offenses of home invasion. We disagree because trespass and malicious destruction of property are not lesser included offenses of home invasion. See Peck v. State, 116 Nev. 840, 845, 7 P.3d 470, 473 (2000), overruled on other grounds by Rosas v. State, 122 Nev. 1258, 1266 n.22 & 1269, 147 P.3d 1101, 1107 n.22 & 1109 (2006). Although we characterized trespass as a "lesser offense" to invasion of the home in Knight v. State, we did not

---

[2]Truesdell claims the district court committed plain error by failing to sua sponte bifurcate the trial because the evidence relating to the TPO created substantial prejudice against him by implying prior criminal misconduct. We disagree and conclude that Truesdell has not demonstrated that the failure to bifurcate the trial based on the TPO violation affected his substantial rights, as the evidence was sufficient to convict him of home invasion without the TPO. See Mclellan v. State, 124 Nev. 263, 269, 182 P.3d 106, 110 (2008) (when a defendant fails to raise the issue below, this court reviews for plain error and will only reverse when clear error affects the defendant's substantial rights).

specifically state whether it was a lesser included or lesser related offense of home invasion. 116 Nev. 140, 142-43, 993 P.2d 67, 69-70 (2000). Trespass contains an element that is not part of the home invasion statute: that a person goes into any building of another with the specific intent to "vex or annoy the owner or occupant thereof, or to commit any unlawful act." NRS 207.200(1)(a). Home invasion does not require forcible entry into the dwelling of another, only that the forcible entry occurs without permission. NRS 205.067(1). Therefore, we conclude trespass is not a lesser included offense of home invasion. Likewise, malicious injury to property contains an element that home invasion does not: that the property belongs to another. NRS 206.310. Home invasion only requires a forcible entry of an inhabited dwelling, not necessarily of another.

### The majority of the prosecutor's statements were proper and any comments that were improper did not affect Truesdell's conviction

Truesdell contends that the State committed prosecutorial misconduct during closing arguments by mentioning facts not in evidence, misstating the law, and disparaging the defense. We disagree. We examine claims of prosecutorial misconduct by first determining whether the prosecutor's behavior was improper. Valdez v. State, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). If the conduct was improper, we next review the comments for harmless error. Id. When prosecutorial misconduct does not involve constitutional error, we only determine whether the error substantially affected the jury's verdict. Id. at 1189, 196 P.3d at 476.

While the evidence must support a prosecutor's statements relating to the facts of the case, the prosecutor may also assert inferences

from the evidence and argue conclusions on disputed issues. <u>Miller v. State</u>, 121 Nev. 92, 100, 110 P.3d 53, 59 (2005). Here, the prosecutor's arguments regarding the service of the TPO were reasonable inferences from the evidence and do not amount to improper conduct. The prosecutor's statement that the State only had to prove that Truesdell received service of the TPO correctly reflected the law. NRS 193.166(1)(a) does not require the State to prove that Truesdell understood the TPO, only that he willfully violated the TPO. Therefore, these comments were proper.

On the other hand, the prosecutor's statements that the defense was attempting to confuse the jury amounted to misconduct, but the comments did not substantially affect the verdict. <u>See</u> <u>Browning v. State</u>, 124 Nev. 517, 534, 188 P.3d 60, 72 (2008) (a prosecutor's disparagement of defense counsel or the legitimate tactics of defense counsel is improper conduct). The State's comments on confusion were very limited and after the district court sustained Truesdell's objection, the State immediately moved on. Therefore, we conclude that while improper, the State's remarks constitute harmless error and did not substantially affect the jury's verdict.

<u>The district court did not plainly err when imposing the sentence enhancement for the TPO violation</u>

Truesdell argues that his conviction violates due process, the Double Jeopardy Clause, and constitutes cruel and unusual punishment because the sentence enhancement for the TPO violation punishes the same conduct that the State relied upon to prove that he committed home invasion. We disagree and review this matter for plain error since Truesdell failed to object to the district court's imposition of a sentence

enhancement for the TPO violation. See Mclellan, 124 Nev. at 269, 182 P.3d at 110.

Under NRS 205.067(1), a person does not have to violate a TPO in order to commit home invasion; instead, a person must forcibly enter an inhabited dwelling without permission. Although a home invasion may occur in the course of the defendant's violation of a TPO, a defendant may also invade a home in a variety of different ways not involving a TPO. See Cordova v. State, 116 Nev. 664, 667-68, 6 P.3d 481, 483-84 (2000) (determining that a defendant's sentence enhancement pursuant to NRS 193.165(3) was not improper because use of a deadly weapon is not a necessary element of second-degree murder because a person could commit the crime in a variety of ways not involving a deadly weapon). Therefore, the district court did not commit plain error by applying the sentence enhancement under NRS 193.166(1)(a) for commission of a felony in violation of a TPO against domestic violence.

The district court did not plainly err by ordering Truesdell to pay $500 to the Indigent Defense Fund

Truesdell alleges the district court committed plain error by ordering him to pay $500 to the Indigent Defense Fund without making any findings regarding his ability to pay such an amount, or the reasons why the amount was appropriate. We disagree and review for plain error since Truesdell failed to object to the district court's imposition of the fee. See Mclellan, 124 Nev. at 269, 182 P.3d at 110.

A district court may order a defendant to pay all or part of the expenses that the state incurred by providing the defendant with an attorney, but must consider the defendant's financial resources and the burden the payment will cause. NRS 178.3975(1). While the district court

in this case did not make specific findings when ordering Truesdell to pay the Indigent Defense Fund, he does not demonstrate how this payment affects his substantial rights.[3] Therefore, we conclude the district court did not commit plain error by requiring Truesdell to pay $500 to the Indigent Defense Fund.[4]

We have considered Truesdell's remaining arguments and conclude they are without merit. Accordingly, we affirm the district court's judgment of conviction.

_____, J.
Gibbons

We concur:

_____ J.
Parraguirre

_____, J.
Douglas

---

[3]NRS 178.3975(3) allows Truesdell to petition the district court for relief from this reimbursement obligation at any time. See Taylor v. State, 111 Nev. 1253, 1259, 903 P.2d 805, 809 (1995) (noting that NRS 178.3975 provides adequate safeguards to prevent an indigent defendant from being required to pay for his defense), overruled on other grounds by Gama v. State, 112 Nev. 833, 836, 920 P.2d 1010, 1013 (1996).

[4]We reject Truesdell's claim that cumulative error warrants reversal. See Rose v. State, 123 Nev. 194, 211, 163 P.3d 408, 419 (2007) (outlining factors for cumulative error).