142 Nev., Advance Opinion 12

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

JOSEPH ROBERT AUSTIN,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 90577-COA

FILED

FEB 26 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Joseph Robert Austin appeals from a judgment of conviction, entered pursuant to a jury verdict, for home invasion, two counts of destruction of property, and attempted home invasion. Second Judicial District Court, Washoe County; Connie J. Steinheimer, Judge.

*Affirmed.*

Richard F. Cornell, Reno,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Jennifer P. Noble, Chief Appellate Deputy District Attorney, Washoe County,
for Respondent.

_____

BEFORE THE COURT OF APPEALS, BULLA, C.J., and GIBBONS and WESTBROOK, JJ.

26-08989

*OPINION*

By the Court, BULLA, C.J.:

To be convicted of home invasion, an individual must forcibly enter a dwelling, without permission of the owner, resident, or lawful occupant of the dwelling. NRS 205.067(1). For purposes of the home invasion statute, a "dwelling" includes "any structure, building, house, room, [or] apartment . . . including, without limitation, any part thereof that is divided into a separately occupied unit . . . [i]n which any person lives." NRS 205.060(6)(b).

In this opinion, we must determine whether an attached garage is part of a "dwelling" for purposes of the home invasion statute. Applying the plain language of NRS 205.060(6)(b), we hold that when a garage is attached to the other rooms of a house, it is part of the structure in which the owner, resident, or lawful occupant lives, and thus is part of the dwelling for purposes of the statute. As a result, when an individual forcibly enters an attached garage, without permission of the owner, resident, or lawful occupant, they have entered a dwelling and committed the crime of home invasion under NRS 205.067(1). In this case, because the State presented sufficient evidence that Austin forcibly entered an attached garage, without permission of the residents, we affirm his home invasion conviction.

Austin also challenges his conviction for attempted home invasion based on his attempt to forcibly enter the dwelling through the laundry room door, which occurred the day after the home invasion involving entry into the garage. Attempted home invasion involves an intent to forcibly enter a dwelling without permission of the owner, resident, or lawful occupant; performance of some act towards the commission of a home invasion; and failure to consummate the home invasion. *See Moffett*

*v. State*, 96 Nev. 822, 824, 618 P.2d 1223, 1224 (1980); NRS 193.153(1). On appeal, Austin only disputes whether he *intended* to commit a home invasion. Because there was sufficient circumstantial evidence to allow a reasonable jury to find Austin intended to forcibly enter the dwelling through the laundry room door without the residents' permission, his argument does not provide a basis for relief. And because Austin does not argue that the State failed to prove the other elements of attempted home invasion, we affirm his conviction.

## FACTS AND PROCEDURAL HISTORY

On the night of May 28, 2024, Austin forcibly removed a window panel on an exterior door leading into a garage attached to Ryan and Robin Slaydens' residence. He then unlocked the door and entered the garage. Austin later claimed that he saw a person he knew named James at the Slaydens' residence and entered the garage to find him. After entering the garage, Austin kicked the door leading from the garage into the laundry room. Ryan, who responded to noise in the garage, confronted Austin, who left. Robin called 9-1-1 and reported the incident. Police officers responded to the Slaydens' residence but were unable to locate Austin.

The next day, May 29, Austin again believed that he saw James at the Slaydens' residence and once again entered the garage, this time apparently without using force. He *then* began forcefully "bang[ing] on the door" leading into the laundry room inside the residence. The force Austin used was such that it bowed in the door, impairing the door's locking mechanism. Ryan again confronted Austin, who left the garage, stopping near a fence next to the Slaydens' property line. According to Austin's subsequent testimony, he asked Ryan about James. However, Ryan testified that Austin yelled that either Ryan or Robin had stolen his money

and that they owed him. Austin eventually left the Slaydens' property and was later arrested.

The State charged Austin with home invasion, in violation of NRS 205.067, for the May 28 act of forcibly entering the garage, and attempted home invasion, in violation of NRS 205.067 in conjunction with NRS 193.153(1)(a)(3), for use of physical force resulting in damage to the laundry room door with intent to enter on May 29.[1]

At trial, Ryan and Robin testified regarding the events of May 28 and May 29, including the damage to both the garage and laundry room doors. Pictures depicting the damage to the doors were also shown to the jury.

During Austin's testimony, he admitted to damaging the Slaydens' exterior garage door and entering the garage on May 28 and entering the garage and "bang[ing] on" the laundry room door on May 29. However, Austin maintained that his intent on both days was only to find James, not to enter the Slaydens' residence. Austin described how, on May 28, he thought he saw James and went to investigate. Austin asserted that he subsequently saw a person in the garage with "a blue light on him," who invited Austin into the garage "so [he] could do music." Austin claimed he again saw James at the Slaydens' residence and went to investigate on May 29. Regarding banging on the laundry room door on this date, Austin stated that he did so because he was "trying to see who [was] in this house."

---

[1]In addition to the home invasion and attempted home invasion charges, Austin was also charged with burglary and two counts of destruction of property.

Austin also testified that he had been diagnosed with bipolar disorder and was not taking any medication.

Because of Austin's alleged underlying mental condition, the State proffered a jury instruction stating that Nevada law does not recognize a diminished-capacity defense for the crimes charged but that evidence of a defendant's mental illness or defect could be considered for the purpose of considering whether the requisite intent was formed for specific intent crimes. The instruction noted, among other things, that "the existence or effect of a mental illness or defect is not a defense to [h]ome [i]nvasion . . . and may not be considered in determining the existence of the intent element of [that] offense[ ]."

Austin objected to the instruction, arguing that he was not presenting a diminished-capacity defense; instead, he was arguing that he did not have the requisite intent to steal for purposes of the burglary charge. In response, the State argued that, regardless of the defense's position, there was evidence regarding Austin's mental condition, and therefore the State did not want the jury to be confused about how it was to consider that evidence. Ultimately, the district court gave the State's proffered diminished-capacity instruction, which Austin agreed was an accurate statement of the law.

In its closing, and in support of the burglary charge, the State pointed to circumstantial evidence that Austin entered the garage with the intent to steal. Additionally, addressing the diminished-capacity instruction, the State asserted that while Austin's actions were "odd," "whatever mental diagnoses he may have had" did not negate his "very formulated, very deliberate intent."

The defense, in closing, conceded many of the material elements of the charged crimes, including that Austin forcibly entered the garage without permission. But Austin's counsel reminded the jury that it "[had] the definition of what a dwelling is" and argued that the jury should not find that the garage was part of the dwelling as it was not inhabited nor did anyone reside in it. The defense further argued that Austin did not have an intent to steal, nor did he intend to enter the laundry room on May 29. Austin's counsel acknowledged the diminished-capacity jury instruction but asserted that what Austin claimed he saw in the garage—his friend James or another person in a blue light beckoning to him—"shows his intent was not to go into that house and steal anything." Relevant here, the jury ultimately convicted Austin of home invasion and attempted home invasion.[2] This appeal followed.

## ANALYSIS

On appeal, Austin challenges only his convictions for home invasion and attempted home invasion. He also challenges the district court's decision to give the diminished-capacity instruction. We address each of Austin's challenges below.

*An attached garage is part of a dwelling for purposes of the home invasion statute (NRS 205.067)*

Austin was convicted of home invasion under NRS 205.067, which provides that "[a] person who, by day or night, forcibly enters a dwelling without permission of the owner, resident or lawful occupant, whether or not a person is present at the time of the entry, is guilty of

---

[2]Austin was found not guilty on the burglary charge. While Austin was convicted on the two destruction of property charges, he does not challenge those convictions on appeal.

invasion of the home." NRS 205.067(1). For purposes of NRS 205.067, "'[d]welling' has the meaning ascribed to it in NRS 205.060," which states:

> "Dwelling" means any structure, building, house, room, apartment, tenement, tent, conveyance, vessel, boat, vehicle, house trailer, travel trailer, motor home or railroad car, including, without limitation, any part thereof that is divided into a separately occupied unit:
>
> (1) In which any person lives; or
>
> (2) Which is customarily used by a person for overnight accommodations . . . .

NRS 205.067(5)(a); NRS 205.060(6)(b).

In challenging his home invasion conviction, Austin does not dispute that he forcibly entered the Slaydens' attached garage without permission. Instead, Austin argues that, for purposes of the home invasion statute, a dwelling does not include parts of a structure in which no person lives or customarily uses for overnight accommodations, such as the Slaydens' attached garage.[3] We disagree.

"[W]e review questions of statutory interpretation de novo." *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). Statutory

---

[3]While Austin also argues that NRS 205.067(1) was partially repealed by implication by the 2015 enactment of NRS 205.0813, that argument was forfeited as Austin failed to raise it before the district court. *See Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48 (2018) (providing that failure to preserve an error forfeits the right to assert it on appeal). But even if we were to consider that argument, it would not provide a basis for relief because the version of NRS 205.067 under which Austin was convicted is materially different from the version in effect when NRS 205.0813 was enacted in 2015. *See* 2019 Nev. Stat., ch. 633, § 56, at 4427 (amending NRS 205.067(1) to apply to a forceable entry into "a dwelling" rather than a forceable entry into "an inhabited dwelling").

interpretation begins by considering legislative intent. *Id.* "The starting point for determining legislative intent is the statute's plain meaning; when a statute 'is clear on its face, a court cannot go beyond the statute.'" *Id.* (quoting *Robert E. v. Just. Ct.*, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983)); *see Judd v. State*, 140 Nev., Adv. Op. 21, 547 P.3d 138, 142 (Ct. App. 2024).

According to Austin, because the definition of "dwelling" set forth in NRS 205.060(6)(b)(1), and utilized by the home invasion statute, "includ[es], without limitation, any part thereof that is divided into a separately occupied unit . . . [i]n which any person lives," any portions of the structure that could not be partitioned into a separate, occupied unit, like an attached garage, cannot be considered a "dwelling." But Austin's argument runs contrary to the plain language of that definition.

Specifically, NRS 205.060(6)(b)(1) provides that a dwelling is "any structure, building, house, room, [or] apartment . . . including, without limitation, any part thereof that is divided into a separately occupied unit . . . [i]n which any person lives." And here, because the Slaydens' garage was attached to the other rooms of the house, it was part of the "structure" in which they lived. *Cf. Structure, Black's Law Dictionary* (12th ed. 2024) (defining "structure" as "[a]ny construction . . . composed of parts purposefully joined together").

Extrajurisdictional cases addressing similar statutory language support this conclusion. *See, e.g., Commonwealth v. Tinsley*, 167 N.E.3d 861, 868-69 (Mass. 2021) (interpreting "dwelling place of another" to include an attached garage); *State v. Otto*, 529 N.W.2d 193, 196 (S.D. 1995) (holding that "occupied structure" includes an attached garage because "[a] garage which is attached to a house logically is all part of the same building, and thus is part of the house or occupied structure" for

purposes of a burglary statute); *State v. Murbach*, 843 P.2d 551, 553 (Wash. Ct. App. 1993) (interpreting "any building . . . , or a portion thereof, which is used or ordinarily used by a person for lodging" to include an attached garage because it "is a 'portion' of a building used as lodging" for a residential burglary statute); *People v. Fox*, 68 Cal. Rptr. 2d 424, 427 (Ct. App. 1997) (holding that "when a garage is attached to an inhabited dwelling, it is to be considered a part of the inhabited dwelling" for a residential burglary statute); *People v. Ramsey*, 107 N.E.3d 443, 448-49 (Ill. App. Ct. 2018) (noting that "normally an attached garage is part of the dwelling because it is part of the structure in which the owner lives").

Tellingly, Austin fails to cite any authority holding that an *attached* garage is *not* considered part of a dwelling.[4] *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (explaining that this court need not consider an appellant's argument that is not supported by relevant authority). Accordingly, we reject Austin's statutory construction argument.[5]

---

[4]Austin's reliance on *Corona v. Superior Court* is unavailing as that case expressly contrasted the detached garage at issue there with attached garages, which are considered part of a dwelling for purposes of the relevant California statute. 280 Cal. Rptr. 3d 285, 290-92 (Ct. App. 2021).

[5]To the extent Austin argues that the language in NRS 205.060(6)(b)(1) providing that a dwelling "includ[es], without limitation, any part thereof that is divided into a separately occupied unit . . . [i]n which any person lives" limits "dwellings" to occupied portions of a structure, that argument is unavailing. The use of statutory language that a definition "includ[es], without limitation" implies enlargement rather than restriction. *See Platte River Ins. Co. v. Jackson*, 137 Nev. 773, 777, 500 P.3d 1257, 1261 (2021) (holding that the legislature's use of "including, without limitation" did not restrict the list to things enumerated).

*The State presented sufficient evidence to convict Austin of home invasion*

We now turn to whether sufficient evidence supports Austin's conviction for home invasion. When considering sufficiency of the evidence, the test is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Guerrina v. State*, 134 Nev. 338, 343, 419 P.3d 705, 710 (2018) (quoting *Milton v. State*, 111 Nev. 1487, 1491, 908 P.2d 684, 686-87 (1995)). To convict a defendant of home invasion, the State must show that the defendant: (1) "forcibly enter[ed] a dwelling," (2) "without permission of the owner, resident or lawful occupant." NRS 205.067(1).

Here, Austin does not dispute that he forcibly entered the attached garage without the Slaydens' permission on May 28. And the record demonstrates that Austin forcibly entered the garage by breaking a window pane of the exterior garage door, unlocking it, and entering. *See* NRS 205.067(5)(b) (defining "forcibly enters" to mean "the entry of an inhabited dwelling involving any act of physical force resulting in damage to the structure"). Additionally, Ryan testified that Austin was not permitted to enter the Slaydens' residence. As the Slaydens' attached garage is part of their dwelling, sufficient evidence was presented for the jury to conclude Austin forcibly entered their dwelling without permission. Accordingly, there was sufficient evidence to convict Austin of home invasion under NRS 205.067.

*The State presented sufficient evidence to convict Austin of attempted home invasion*

Austin also challenges his conviction for attempted home invasion for the May 29 incident. Austin contends that his mere act of

COURT OF APPEALS
OF
NEVADA

(O) 1947B

banging on the Slaydens' door cannot support his conviction as the evidence did not support the conclusion that he intended to break into the residence. Instead, Austin insists that he was simply trying to get the Slaydens' attention. For the reasons set forth below, we conclude that the State presented sufficient evidence to support his conviction.

"To prove an attempt to commit a crime, the prosecution must establish (1) the intent to commit the crime; (2) performance of some act towards its commission; and (3) failure to consummate its commission." *Moffett*, 96 Nev. at 824, 618 P.2d at 1224. Austin challenges only the first element: the intent to commit the crime of home invasion.

"Intention is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused." NRS 193.200. "[I]ntent need not be proved by positive or direct evidence, but may be inferred from the conduct of the parties and the other facts and circumstances disclosed by the evidence." *Moore v. State*, 122 Nev. 27, 36, 126 P.3d 508, 513 (2006) (quoting *Larsen v. State*, 86 Nev. 451, 453, 470 P.2d 417, 418 (1970)). Further, "circumstantial evidence may constitute the sole basis for a conviction." *Washington v. State*, 132 Nev. 655, 661, 376 P.3d 802, 807 (2016) (quoting *Canape v. State*, 109 Nev. 864, 869, 859 P.2d 1023, 1026 (1993)).

Here, the record shows that on May 29, Austin entered the Slaydens' garage and began banging on the door to the laundry room with such force that it bowed and cracked and the door's lock was damaged. Robin characterized Austin banging on the door as "kicking . . . like it was trying to be kicked in." And Ryan testified that he assumed Austin was breaking into their house again. In addition, the jury was presented with photographs depicting the damage to the laundry room door.

Thus, there was significant circumstantial evidence that Austin intended to forcibly enter a part of the structure in which the Slaydens lived without their permission. *See Moore*, 122 Nev. at 36, 126 P.3d at 513; NRS 205.067(1). While Austin claimed he merely intended to get the Slaydens' attention, a reasonable jury could find otherwise. Accordingly, because Austin does not contend that the State failed to prove the other elements of attempted home invasion, he has not demonstrated that his conviction should be overturned.

*Austin forfeited his arguments regarding the diminished-capacity jury instruction*

Finally, Austin challenges the district court's decision to give a diminished-capacity jury instruction, arguing it improperly defined home invasion "as a general intent offense in a way that" prevented him from presenting a mistake-of-fact defense.

While Austin objected to the use of the diminished-capacity instruction below, his objection was not premised on the instruction's purported impact on his ability to present a mistake-of-fact defense.[6] Moreover, the record demonstrates that Austin never proffered a mistake-of-fact instruction. Generally, the defense only applies to crime for which "specific intent is an element." *Jenkins v. State*, 110 Nev. 865, 868, 877 P.2d

---

[6]At trial, Austin focused on the instruction's alleged impact on specific intent crimes, as opposed to the general intent crime of home invasion. *See Truesdell v. State*, 129 Nev. 194, 202, 304 P.3d 396, 401 (2013) (stating that "invasion of the home is a general intent crime"). But Austin does not raise this argument on appeal, and thus he has forfeited it. *See Palmieri v. Clark County*, 131 Nev. 1028, 1033 n.2, 367 P.3d 442, 446 n.2 (Ct. App. 2015) (citing *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011), for the proposition that issues an appellant does not raise on appeal are forfeited).

1063, 1065 (1994). Thus, Austin's argument that the diminished-capacity jury instruction prevented him from presenting a mistake-of-fact defense to the general intent home invasion charge is unavailing.[7] *See McKenna v. State*, 114 Nev. 1044, 1052, 968 P.2d 739, 745 (1998) ("Failure to . . . request a jury instruction precludes appellate review, unless the error is patently prejudicial and requires the court to act sua sponte to protect the defendant's right to a fair trial.").

## CONCLUSION

We hold that an attached garage constitutes part of a dwelling for purposes of the home invasion statute, such that when an individual forcibly enters the garage without permission of the owner, resident, or lawful occupant of the dwelling, a home invasion has been committed. And because sufficient evidence was presented that Austin forcibly entered the Slaydens' attached garage without their permission, we affirm Austin's conviction for home invasion related to the May 28 incident. Regarding the attempted home invasion conviction, sufficient circumstantial evidence was presented to allow the jury to conclude Austin intended to forcibly enter the Slaydens' residence on May 29 without their permission. And because Austin does not assert that the State failed to prove the other elements of

---

[7]Austin also points to NRS 194.010(7), which exempts from criminal liability "[p]ersons who committed the act or made the omission charged, through misfortune or by accident, when it appears that there was no evil design, intention or culpable negligence." But Austin failed to raise NRS 194.010(7) below, improperly raises this statute for the first time in his reply brief, and supplies no cogent argument in support of its application. *See Cooper v. State*, 134 Nev. 860, 861 n.2, 432 P.3d 202, 204 n.2 (2018) (declining to consider an argument raised for the first time in a reply brief); *Maresca*, 103 Nev. at 673, 748 P.2d at 6 (explaining that this court need not consider issues that are not cogently argued).

this crime, we affirm Austin's attempted home invasion conviction related to the May 29 incident.  We therefore affirm the judgment of conviction.

_____, C.J.
Bulla


We concur:

_____, J.
Gibbons

_____, J.
Westbrook

COURT OF APPEALS
OF
NEVADA

(0) 1947B