OPINION
 

 By the Court,
 

 Becker, J.:
 

 Appellant Joseph Daniel Romero damaged property when he threw human excrement at an individual inside of a retail store in Las Vegas. Romero was convicted of burglary, aggravated stalking, and malicious destruction of private property. Romero contends that the State failed to establish that the value of the damaged property or the loss resulting from the offense exceeded the $5,000 felony threshold.
 
 [1]
 
 As a result, he argues that the State failed to prove the elements of felony malicious destruction of private property beyond a reasonable doubt. We agree, and for the reasons set forth below, we reverse Romero’s conviction for felony malicious destruction of private property and remand the matter
 
 *346
 
 to the district court with instructions to enter a judgment of conviction of gross misdemeanor malicious destruction of private property.
 

 FACTS
 

 On January 8, 1998, Romero walked into a retail store in Las Vegas and threw human feces and urine from a container he was carrying at a store employee. The excrement not only soaked the employee’s clothing, but also scattered on merchandise and furnishings, causing significant property damage. Romero was a former employee of the store and prior to that evening, Romero made repeated telephone and facsimile threats, including death threats, to employees at the store over an extended period of time. The threats ceased when Romero was arrested.
 

 At trial, the State admitted into evidence a videotape showing the damage to the merchandise, furnishings and clothing. A former store manager, Dawit Ambaye (“Ambaye”), testified that, based on figures he received from the store’s corporate office, individual contractors and vendors provided by the corporate office and his own experience, he compiled an expense list estimating the costs incurred as a result of the property damage. In particular, this list outlined replacement figures for a computer ($950), a wall unit ($1,500), and a light fixture ($160) as well as the cost of carpet cleaning and repair ($1,050). The list also included the replacement cost of damaged store merchandise ($250) and the employee’s clothing ($150). Ambaye further testified that, in addition to the replacement figure for the computer, the expense list included the salvage value of the computer ($950). Ambaye testified that the damages incurred by the store as a result of Romero’s conduct totaled $5,010. While the term “fair market value” was not used specifically in evaluating the damages suffered by the store, the testimony did contain information from which a jury could determine the fair market value of some of the destroyed property.
 

 Additionally, evidence was admitted of the expenses paid by the store to hire a security guard to protect frightened employees for several weeks after the incident.
 

 DISCUSSION
 

 A felony conviction for malicious destruction of private property under NRS 206.310 and 193.155 must be supported by proof that the value of the property affected or the loss resulting from the damage to property equals or exceeds the sum of $5,000.
 
 [2]
 

 See
 
 
 *347
 
 Rossana v. State, 113 Nev. 375, 384, 934 P.2d 1045, 1050-51 (1997). We have never decided, however, the meaning of the phrases “value of the property affected” or “loss resulting from the offense.”
 

 For other property crimes, such as larceny, we have concluded that the measure of the damages sustained as a result of the theft should generally be the fair market value of the stolen property.
 
 See, e.g.,
 
 Bryant v. State, 114 Nev. 626, 629, 959 P.2d 964, 966 (1998). The cost to replace a stolen item may be relevant to establishing the fair market value of that property when the replacement is a used item of similar age and specifications as the stolen item. However, when the replacement cost is based upon the current market price for an unused new item, such evidence alone is generally not sufficient to establish the monetary thresholds which distinguish between misdemeanor, gross misdemeanor and felony property crimes.
 
 [3]
 
 Such a rule is mandated by the language of the statute, which separates the various degrees of theft based upon the value of the property that was stolen, not the cost to replace the stolen property with a brand new item.
 

 Romero contends we should adopt the
 
 Bryant
 
 standard in cases involving the malicious destruction of private property. Using this standard, much of the testimony of Ambaye would be insufficient to establish that the value of the property destroyed met or exceeded the $5,000 requirement of the statutes. Specifically, Romero argues that the testimony regarding the cost to replace old equipment with new equipment and the hiring of the security guard would be improper and, without such testimony, the amount of the damages is under $5,000.
 

 The State argues that
 
 Bryant
 
 is not controlling and urges us to adopt a different standard for malicious destruction of private property cases. The State contends that the words “value of the property affected or the loss resulting from the offense” have a broader meaning than the language contained in the larceny
 
 *348
 
 statutes at issue in
 
 Bryant.
 
 Thus if a business is temporarily closed or has to hire extra security as a result of the malicious act, then such damages are included under “loss resulting from the offense.’ ’
 

 Penal statutes should be narrowly construed where they are ambiguous.
 
 See
 
 Buschauer v. State, 106 Nev. 890, 896, 804 P.2d 1046, 1049 (1990); Anderson v. State, 95 Nev. 625, 629, 600 P.2d 241, 243 (1979). The phrase “value of the property affected or the loss resulting from the offense” is subject to more than one reasonable interpretation and is therefore ambiguous. Thus NRS 206.310 and 193.155 must be narrowly construed. The overall intent of these statutes is to make criminal penalties proportionate to the value of the property affected. They should be interpreted to give meaning to that intent while adopting the narrower of two reasonable definitions.
 

 Malicious destruction of private property, unlike theft, can result in two types of direct injury to the property, total or partial destruction. The language in the statute refers to both types of destruction. The fair market value of the property is the appropriate standard for determining the level of culpability when the property is completely destroyed. When an item is totally destroyed it is as though it was stolen, and the
 
 Bryant
 
 rule should apply. The degree of criminal liability should be determined by the fair market value of the property unless the fair market value cannot be reasonably determined at which point alternate evidence of value may be offered such as new replacement.
 
 See
 
 Cleveland v. State, 85 Nev. 635, 637, 461 P.2d 408, 409 (1969).
 

 However, when property is only partially destroyed, it falls within the “loss resulting from the offense” category. Here the appropriate measure of damages is the cost related to repair or restore the property.
 
 [4]
 
 The “loss” must be directly tied to the damage to the property,
 
 i.e.,
 
 “the offense.” Ancillary consequences that may accompany a crime in general, such as the need to provide increased security, cannot be included to meet the statutory thresholds.
 

 
 *349
 
 Analyzing the evidence in this case, we conclude that the district court erred in allowing the State to admit evidence regarding the cost to hire a security guard. We further conclude that the district court erred in allowing evidence of the replacement value, as opposed to the fair market value, of some of the destroyed property, such as the wall unit, without, first establishing the need for a new unit rather than a used unit. Finally, the damaged computer was counted twice, the salvage value of $950 (arguably the fair market value) and the cost to replace the computer at another $950.
 

 Without the questionable items, the value of' the property destroyed or the loss resulting from the offense falls below the $5,000 required for a felony conviction. However, there is overwhelming evidence that the value of the property destroyed or repaired exceeds $250, the threshold for a gross misdemeanor conviction. Accordingly, we reverse the judgment of conviction of felony malicious destruction of private property, and remand this case to the district court for entry of a judgment of conviction of gross misdemeanor malicious destruction of private property and for further proceedings consistent with this opinion.
 

 Maupin and Shearing, JJ., concur.
 

 [1]
 

 Romero raises several other issues, including the constitutionality of NRS 200.275. Based upon the record and the briefs filed herein, we conclude that Romero’s remaining contentions on appeal are without merit. Accordingly, we affirm Romero’s burglary and aggravated stalking convictions.
 

 [2]
 

 NRS 206.310 provides, in pertinent part, that:
 

 Every person who shall willfully or maliciously destroy or injure any real or personal property . . . shall be guilty of a public offense pro
 
 *347
 
 portionate to the value of the property affected or the loss resulting from such offense.
 

 NRS 193.155 provides, in pertinent part, that:
 

 Every person who is guilty of a public offense proportionate to the value of the property affected or the loss resulting from the offense shall be punished as follows:
 

 1. Where the value of the loss is $5,000 or more ... for a category C felony as provided in NRS 193.130.
 

 [3]
 

 There are instances where the value of the stolen property might only be established by original or replacement costs. For example, the value of a framed piece of artwork by an unknown artist might be best determined by the initial price of the piece or the replacement cost.
 
 Biyant
 
 merely requires the prosecution to lay a foundation for the admission of valuations that are not based on a traditional fair market value analysis.
 

 [4]
 

 In some cases, the loss may extend beyond the repair costs. For example, it may be impossible to repair the property so that it matches the undamaged portions of the property, like the paint job on an automobile. In such instances, restoration of the property to its previous condition may require painting the entire automobile, even the undamaged portions. Where the State is claiming such damages, it must lay the foundation to show why such additional costs are necessitated by the damage created by the actions of the defendant.