134 Nev., Advance Opinion 45

IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT GUERRINA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71444

FILED

JUN 07 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of burglary while in possession of a deadly weapon, kidnapping with use of a deadly weapon, robbery with use of a deadly weapon, and coercion. Eighth Judicial District Court, Clark County; Susan Johnson, Judge.

*Affirmed in part, vacated in part, reversed in part, and remanded.*

Sandra L. Stewart, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Krista D. Barrie, Chief Deputy District Attorney, and Charles W. Thoman, Deputy District Attorney, Clark County,
for Respondent.

BEFORE CHERRY, PARRAGUIRRE and STIGLICH, JJ.

OPINION

By the Court, STIGLICH, J.:

In this appeal, we first determine whether a criminal defendant's request to represent himself was properly denied as "untimely" when the request was made 24 days prior to the scheduled trial date. We

18-21644

conclude that, under *Lyons v. State*,[1] such a request may be denied as untimely if granting it will delay trial. We further conclude that *Lyons* is consistent with United States Supreme Court precedent and decline to overrule it. We therefore affirm the district court's denial of Robert Guerrina's request to represent himself.

Next, we consider whether the State produced sufficient evidence to sustain convictions for robbery and kidnapping when both convictions stem from Guerrina's actions over the course of a single incident. As we held in *Mendoza v. State*, the dual convictions will be sustained if the perpetrator's movement or restraint of the victim "stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion." 122 Nev. 267, 275, 130 P.3d 176, 181 (2006). We expressly overrule prior opinions inconsistent with *Mendoza*, and we affirm Guerrina's dual convictions of robbery and kidnapping.

Finally, we consider whether the State produced sufficient evidence to support charges that the defendant used or possessed a "deadly weapon" during the underlying acts. Because there was insufficient evidence that Guerrina's "weapon" satisfied an applicable definition of deadly weapon, we vacate and reverse his deadly weapon sentencing enhancements.

---

[1]106 Nev. 438, 796 P.2d 210 (1990), *abrogated in part on other grounds by Vanisi v. State*, 117 Nev. 330, 341, 22 P.3d 1164, 1172 (2001).

## FACTS AND PROCEDURAL HISTORY

Ana Cuevas worked at FastBucks, a payday loan store in Henderson, Nevada. Each morning, she retrieved money from the store and deposited it in the bank before the store opened at 10 a.m. On most mornings, that money consisted of the business's proceeds from the previous day only, but on Mondays it included proceeds from both Friday and Saturday.

One Monday morning, as Cuevas was walking toward the store, a man wearing a hat and sunglasses approached her. He carried a plastic bag and an object that Cuevas believed to be a knife. The man ordered Cuevas to unlock the FastBucks door and accompany him inside.

Once inside, the man locked the door, stood with his back to it, and ordered Cuevas to "get the money." As Cuevas went to a back room to retrieve the store's money, the man removed a spray can from his bag and sprayed a surveillance camera above the door. After Cuevas handed him the money, the man demanded she give him her personal wallet and cellphone. Cuevas complied. The man then ordered Cuevas to disconnect a FastBucks telephone in the room and throw it onto the floor. Cuevas again complied. The man removed a container from his bag and poured its liquid contents onto the floor in front of the door. Finally, he exited the store and locked the door behind him using Cuevas's key. Once locked, the door could not be opened from the inside without a key—which Cuevas no longer possessed.

After the man departed, Cuevas reconnected the FastBucks telephone and called the police. Upon entering the building, police identified the liquid near the door as "chlorine or bleach, something nondangerous." Cuevas told a detective that the perpetrator was Robert

Supreme Court
of
Nevada

(O) 1947A

Guerrina, a former FastBucks employee whom she had previously seen several times at work events. The detective showed her a photograph of Guerrina from DMV records. Cuevas confirmed that he was the perpetrator.

The detective subsequently learned that Guerrina had been staying at a Motel 6 in Las Vegas. The detective spoke with the Motel 6 manager and viewed surveillance video of the motel on the day of the robbery. The detective testified that the video showed Guerrina entering the Motel 6 at some time "after the incident" and then departing that same day. He further testified that Guerrina did not return to the Motel 6, despite having paid in advance for the following day. He explained that he did not make a copy of the security tape because "it didn't establish the probable cause of [his] case," and it would not have provided Guerrina with an alibi defense because "there wasn't a conflict with the time." The tape was subsequently destroyed.

At Guerrina's arraignment, the district court appointed a public defender to represent him. Ten weeks later, Guerrina moved to dismiss the public defender, claiming various inadequacies in representation. The district court granted Guerrina's motion and appointed Edward Hughes to replace the public defender. Eight months later—and 24 days before trial—Guerrina moved to dismiss Hughes and represent himself. In a hearing on that motion, Guerrina stated that he would require a continuance if he represented himself because he would need additional time to prepare for trial. The district court denied Guerrina's request as untimely.

After a four-day trial, the jury convicted Guerrina of burglary while in possession of a deadly weapon, first degree kidnapping with use of a deadly weapon, robbery with use of a deadly weapon, and coercion.

 

## DISCUSSION

*Guerrina's Sixth Amendment right to self-representation was not violated*

Guerrina argues that the district court violated his Sixth Amendment right to self-representation when it denied his request to represent himself. We review the district court's order denying Guerrina's request for an abuse of discretion. *See Lyons v. State*, 106 Nev. 438, 441, 796 P.2d 210, 211 (1990), *abrogated in part on other grounds by Vanisi v. State*, 117 Nev. 330, 341, 22 P.3d 1164, 1172 (2001).

"A criminal defendant has the right to self-representation under the Sixth Amendment of the United States Constitution and the Nevada Constitution." *Vanisi*, 117 Nev. at 337, 22 P.3d at 1169 (citing *Faretta v. California*, 422 U.S. 806, 818-19 (1975)). But that right is not absolute. In Nevada, "[a] court may . . . deny a request for self-representation if the request is untimely, equivocal, or made solely for purposes of delay or if the defendant is disruptive." *Id.* at 338, 22 P.3d at 1170.

In *Lyons v. State*, this court created a two-part test to determine whether a request for self-representation (a *Faretta* request) is untimely. 106 Nev. at 445-46, 796 P.2d at 214. If the request can be granted "without need for a continuance, the request should be deemed timely." *Id.* at 446, 796 P.2d at 214. But if granting the request would require a continuance, the district court may deny the request as untimely if there is no "reasonable cause to justify [the] late request." *Id.*

Guerrina argues that the *Lyons* timeliness test violates *Faretta v. California*, the Supreme Court case establishing a criminal defendant's Sixth Amendment right to self-representation. 422 U.S. at 817-19. In that case, a defendant made a request for self-representation "weeks before

trial."[2] 422 U.S. at 835. The trial court found that the defendant lacked the ability to adequately defend himself, so it denied his request. *Id.* at 808-10. The Supreme Court vacated and remanded, holding that the Sixth Amendment includes a "right of self-representation," and the trial court violated that right when it denied the defendant's request. *Id.* at 821, 836. But *Faretta* did not address the issues of timeliness and delay.[3] Rather, a subsequent Supreme Court opinion implicitly approved courts' practices of denying *Faretta* requests as untimely. *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 161-62 (2000) ("The defendant must voluntarily and intelligently elect to conduct his own defense, and most courts require him to do so in a timely manner." (internal quotation marks and citation omitted)). In short, *Faretta* held that a defendant's request to represent himself, submitted an unspecified number of "weeks before trial," could not be denied merely because the district court found his legal acumen to be lacking. 422 U.S. 835-36. It "nowhere announced a rigid formula for determining timeliness without regard to the circumstances of the particular case." *People v. Lynch*, 237 P.3d 416, 439 (Cal. 2010), *abrogated*

---

[2]The *Faretta* opinion does not reveal *how many* "weeks before trial" the request was made.

[3]We are not persuaded by Guerrina's reliance on *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005), in which the Ninth Circuit interpreted *Faretta* to mean that requests to self-represent made "weeks before trial" are timely. This court is not bound by the Ninth Circuit's interpretation of Supreme Court opinions. *See generally* Boyd Mangrum, *Freeing State Courts to Disregard Lower Federal Court Constitutional Holdings*, 25 Sw. L.J. 478, 481 (1971) (citing examples where federal appellate courts recognized that decisions of lower federal courts are not binding precedent for state courts).

*in part on other grounds by People v. McKinnon*, 259 P.3d 1186, 1212 (Cal. 2011).

We conclude that the *Lyons* timeliness rule is consistent with Supreme Court precedent. In affording district courts discretion to deny unjustifiably late *Faretta* requests that will cause delay, *Lyons* furthers the State's interest "in avoiding disruptions and delays" while protecting defendants' Sixth Amendment right to self-representation. *See Williams v. State*, 655 P.2d 273, 276 (Wyo. 1982).

In this case, Guerrina insisted that he would require a continuance if his *Faretta* request was granted, so, under *Lyons*, the district court had discretion to deny Guerrina's request as untimely unless Guerrina presented "reasonable cause to justify [his] late request." 106 Nev. at 446, 796 P.2d at 214. Guerrina presented no such "reasonable cause." He pointed to no event that triggered his loss of faith in counsel 8 months after counsel's appointment and 24 days before trial. Indeed, Guerrina admitted that he did not question Hughes' lawyering abilities, and Hughes was Guerrina's second appointed counsel due to Guerrina's dismissal of his first lawyer. In sum, because granting Guerrina's request would have required a continuance and Guerrina provided no "reasonable cause to justify [his] late request," the district court did not abuse its discretion when it denied his request. *See Lyons*, 106 Nev. at 446, 796 P.2d at 214. Accordingly, we affirm the district court's order denying Guerrina's *Faretta* request as untimely.

*The evidence was sufficient to support convictions of robbery and kidnapping*

Guerrina next argues that the evidence was insufficient to sustain his dual convictions for robbery and kidnapping. He contends that he cannot be convicted of both crimes because all acts were in furtherance

of the robbery and any movement of Cuevas did not create a greater risk of harm than was necessary to complete the robbery and escape.

"[I]t is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975). On appeal, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Milton v. State*, 111 Nev. 1487, 1491, 908 P.2d 684, 686-87 (1995) (internal quotation marks omitted).

As relevant here, first-degree kidnapping occurs where a person "holds or detains" another person "for the purpose of committing . . . robbery upon or from the person." NRS 200.310(1). "Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury . . . ." NRS 200.380(1). In *Mendoza v. State*, this court addressed the propriety of the State pursuing robbery and kidnapping charges stemming from a single incident:

> [T]o sustain convictions for both robbery and kidnapping arising from the same course of conduct, any movement or restraint must stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion.

122 Nev. 267, 275, 130 P.3d 176, 181 (2006). "Whether the movement of the victim is incidental to the associated offense and whether the risk of harm is substantially increased thereby are questions of fact to be determined by

SUPREME COURT
OF
NEVADA

(O) 1947A

the trier of fact in all but the clearest cases." *Curtis D. v. State*, 98 Nev. 272, 274, 646 P.2d 547, 548 (1982).

Here, Guerrina accosted Cuevas outside of FastBucks, a public place, and forced her to accompany him into the secluded store, where he later demanded her personal wallet and cellphone. Viewing the evidence in the light most favorable to the State, moving Cuevas "from a public place into a private one . . . substantially increased the risk of harm" to her. *Gonzales v. State*, 131 Nev. 481, 498, 354 P.3d 654, 665 (Ct. App. 2015). Guerrina could have simply taken Cuevas's key, cellphone, and wallet outside of the store, and a reasonable jury could conclude that forcing her to accompany him inside "substantially exceeded the movement necessary to complete the robbery." *Stewart v. State*, 133 Nev., Adv. Op. 20, 393 P.3d 685, 688 (2017). Moreover, a rational trier of fact could have concluded that pouring liquid around the door and then locking Cuevas within the store constituted "restraint substantially in excess of that necessary to [the robbery's] completion." *Mendoza*, 122 Nev. at 275, 130 P.3d at 181. In sum, "[t]his is not one of the 'clearest of cases' in which the jury's verdict must be deemed unreasonable."[4] *Stewart*, 133 Nev., Adv. Op. 20, 393 P.3d at 688 (internal quotation marks omitted). Therefore, we affirm Guerrina's convictions of both robbery and kidnapping.

---

[4]Guerrina cites two cases for the proposition that his movement of the victim was merely incidental to the robbery: *Jefferson v. State*, 95 Nev. 577, 580, 599 P.2d 1043, 1044 (1979), and *Hampton v. Sheriff*, 95 Nev. 213, 214, 591 P.2d 1146, 1146-47 (1979). However, those 1979 cases predate *Mendoza*, wherein this court revised Nevada's rule concerning convictions for both robbery and kidnapping arising out of the same course of conduct. 122 Nev. at 269, 274, 130 P.3d at 177, 180. To the extent that *Mendoza* did not expressly overrule those cases, we do so now.

*The evidence was insufficient to support a finding that Guerrina used or possessed a deadly weapon*

Guerrina argues that there was insufficient evidence for a rational juror to have found that he used or possessed a deadly weapon as he committed these crimes. Viewing the evidence "in the light most favorable to the prosecution," *Milton*, 111 Nev. at 1491, 908 P.2d at 686-87 (internal quotation marks omitted), we agree.

To support the charges that Guerrina committed robbery and kidnapping with the use of a deadly weapon, "the State must prove that the weapon . . . is a 'deadly weapon' as defined in NRS 193.165(6)." *Berry v. State*, 125 Nev. 265, 271, 212 P.3d 1085, 1089 (2009), *abrogated in part on other grounds by State v. Castaneda*, 126 Nev. 478, 482 n.1, 245 P.3d 550, 553 n.1 (2010). "A knife is not necessarily a deadly weapon under NRS 193.165." *Domingues v. State*, 112 Nev. 683, 693 n.1, 917 P.2d 1364, 1371 n.1 (1996).[5]

By contrast, it remains unsettled how "deadly weapon" is defined within the context of burglary while in possession of a deadly weapon. Unlike Guerrina's robbery and kidnapping sentences, which were enhanced by NRS 193.165, his burglary sentence was enhanced by NRS 205.060(4) (extending the punishment for burglary from 1-10 years of imprisonment to 2-15 years when a burglar possesses a deadly weapon).

---

[5]*Domingues* was decided based on a statute and caselaw in effect prior to a 1995 amendment that broadened NRS 193.165's definition of deadly weapon. *See* 1995 Nev. Stat., ch. 455, § 1, at 1431. Given, however, that the current version of NRS 193.165 explicitly includes *some* knives as deadly weapons, *see* NRS 193.165(6)(c); NRS 202.265(1)(b), the principle of *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another—leads us to conclude that the statement in *Domingues* remains true: not all knives are deadly weapons.

While we have held that NRS 193.165(6)'s definitions of deadly weapon are "instructive for determining whether a weapon is a 'deadly weapon' for purposes of NRS 205.060(4)," *Funderburk v. State*, 125 Nev. 260, 261, 212 P.3d 337, 337 (2009), we have not definitively incorporated all of NRS 193.165(6)'s definitions into NRS 205.060(4). However, as we explain below, because the record is devoid of *any* evidence that Guerrina's "weapon" was deadly, we need not presently elaborate on this issue.

In its jury instructions, the district court defined "deadly weapon" as follows:

> A "deadly weapon" is any instrument which, if used in the ordinary manner contemplated by its design and construction, will or is likely to cause substantial bodily harm or death; or any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death.

Those definitions comport with the definitions set forth in NRS 193.165(6)(a) and NRS 193.165(6)(b). Thus, although NRS 193.165(6)(c) is arguably more apt for the facts of this case,[6] our review is limited to whether there was sufficient evidence for a rational jury to have concluded either (a) that Guerrina's weapon was designed to cause "substantial bodily harm or death," or (b) under the circumstances in which Guerrina used, attempted to use, or threatened to use it, the weapon was "readily capable of causing substantial bodily harm or death."

---

[6]*See* NRS 193.165(6)(c) (defining deadly weapon as any "weapon specifically described in . . . NRS 202.265"); NRS 202.265(1)(b) (listing a "dirk, dagger, or switchblade knife"); NRS 202.265(5)(d) (defining "switchblade knife").

Turning to the facts of this case, the only evidence relating to Guerrina's weapon was Cuevas's testimony. Cuevas admitted that she never saw the blade of a knife but assumed that the object in Guerrina's hand was a folded knife. That object had a white handle that protruded "[m]aybe 3 inches, 2 inches" from Guerrina's hand. When asked how she knew that the object was a folding knife, Cuevas answered, "I'm familiar with what they look like." When pressed on cross-examination, Cuevas admitted that she could not tell the difference between a folding knife, a corkscrew, and a folding comb "when they're in the closed position." The object she saw was in the closed position, and while she believed it to be knife, she admitted that she could not be sure.

Although Cuevas reasserted on redirect that there was "no doubt in [her] mind" that Guerrina was holding a knife, her testimony reveals significant uncertainty as to the nature of the object within Guerrina's hand. Cuevas's confidence that the object was a knife is belied by the facts that she never saw a blade and that she admittedly could not distinguish a corkscrew from a knife from a comb when the object is in the closed position. Indeed, the only thing she actually saw was an object she described as a white handle. Regardless of what that object actually was, there was no evidence that it was designed to be deadly or that Guerrina used or threatened to use it in a deadly manner. Thus, the record contains insufficient evidence to support charges that Guerrina used or possessed a deadly weapon. *See Berry*, 125 Nev. at 271, 212 P.3d at 1089 (requiring the State to prove the weapon "is a 'deadly weapon' as defined in NRS 193.165(6)").

Accordingly, we order stricken the "with use of a deadly weapon" language from Guerrina's robbery and kidnapping convictions and

vacate the enhanced sentences based thereon. *See Bias v. State*, 105 Nev. 869, 873, 784 P.2d 963, 965 (1989) (vacating a jury's finding that a defendant's toy gun constituted a deadly weapon and the related enhanced sentences). That is, we affirm Guerrina's 3-8 and 5-15 year sentences for robbery and kidnapping, respectively, but vacate his 3-8 and 2-5 year additional sentences that the district court imposed pursuant to the deadly weapon enhancement, NRS 193.165. Similarly, we order stricken "while in possession of a deadly weapon" from Guerrina's burglary conviction. However, because we cannot determine what portion, if any, of Guerrina's 2-7 year burglary sentence was due to his alleged possession of a deadly weapon, we reverse Guerrina's burglary sentence and remand to the district court for resentencing of Guerrina's burglary conviction. *Compare* NRS 205.060(2) (1-10 years imprisonment for baseline burglary), *with* NRS 205.060(4) (2-15 years imprisonment for burglary while in possession of a deadly weapon).

*Guerrina's remaining claims are without merit*

Guerrina presents two additional claims. First, he argues that the State failed to prove any act of coercion. As relevant here, felony coercion consists of the use or immediate threat of violence or injury against a person or property, with "the intent to compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing." NRS 207.190(1), (2)(a). Whether the threat was "immediate" depends on the "viewpoint of a reasonable person facing the same threat." *Santana v. State*, 122 Nev. 1458, 1459, 148 P.3d 741, 742 (2006).

In this case, Guerrina committed coercion when he ordered Cuevas to disconnect the FastBucks telephone. He issued that order while standing with his back against the FastBucks door, which he had locked after forcing Cuevas to accompany him inside the otherwise empty store.

SUPREME COURT
OF
NEVADA

(O) 1947A

Before ordering her to disconnect the phone, he had sprayed the store's surveillance camera and robbed Cuevas of her wallet and cellphone, as well as the FastBucks money. Under such circumstances, a reasonable jury could have concluded that, from "the viewpoint of a reasonable person," Guerrina's order was accompanied by an immediate—albeit unspoken— "threat of physical force." *Id.* at 1462, 148 P.3d at 744. And, of course, Cuevas had a right to abstain from disconnecting the phone. Thus, viewing the evidence "in the light most favorable to the prosecution," *Milton*, 111 Nev. at 1491, 908 P.2d at 686-87 (internal quotation marks omitted), a rational juror could have found beyond a reasonable doubt that Guerrina committed felony coercion.

Second, Guerrina argues that the district court should have dismissed his indictment due to police misconduct. In particular, he argues that the police's decision not to obtain the Motel 6 surveillance tape constituted a failure to gather exculpatory evidence. We review the district court's denial of Guerrina's motion to dismiss for an abuse of discretion. *See Hill v. State*, 124 Nev. 546, 550, 188 P.3d 51, 54 (2008).

To succeed on this claim, Guerrina must demonstrate that the surveillance tape was "material" and that the police's failure to gather it is "attributable to negligence, gross negligence, or bad faith." *Daniels v. State*, 114 Nev. 261, 267-68, 956 P.2d 111, 115 (1998). "Evidence is material when there is a reasonable probability that, had the evidence been available to the defense, the result of the proceedings would have been different." *Jackson v. State*, 128 Nev. 598, 613, 291 P.3d 1274, 1284 (2012).

Guerrina argues that the videotape was material because it could have provided him an alibi defense *if* it showed him at the Motel 6 at the time of the robbery or *if* it showed him wearing clothes different from

those worn by the FastBucks robber. He points to no evidence to contradict the detective's testimony that the timing of Guerrina's appearance in the Motel 6 videotape did not conflict with the timing of the FastBucks robbery. His arguments *assume* rather than *demonstrate* that the videotape evidence was material. *See Randolph v. State*, 117 Nev. 970, 987, 36 P.3d 424, 435 (2001) (rejecting a defendant's argument that evidence "would have been favorable to his case" as "mere speculation" where he offered no evidence to support his assertions). Thus, Guerrina has failed to show that the Motel 6 videotape was material to his defense, so his claim fails the first prong of *Daniels*. 114 Nev. at 267-68, 956 P.2d at 115. Accordingly, the district court did not abuse its discretion by denying Guerrina's motion to dismiss the charges against him.

## *CONCLUSION*

We affirm *Lyons v. State*, which affords a district court discretion to reject a *Faretta* request as untimely if granting the request would require a continuance and the defendant shows no reasonable cause to justify the lateness of his request. The district court did not abuse its discretion in denying Guerrina's *Faretta* request, which he inexplicably submitted 24 days prior to trial along with a request for a continuance.

We also affirm the *Mendoza v. State* test to determine when evidence is sufficient to simultaneously convict a defendant of robbery and kidnapping from a single course of events. Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found that Guerrina's actions involved restraint substantially in excess of that necessary to effectuate the robbery and substantially increased the risk of harm to the victim. We therefore affirm his dual convictions.

 

Lastly, we reiterate that to sustain "deadly weapon" charges, the State must produce evidence that a perpetrator's weapon satisfied an applicable definition of "deadly weapon." Because there was insufficient evidence to support this finding, we vacate and reverse Guerrina's deadly weapon sentencing enhancements pursuant to NRS 193.165 and remand to the district court to resentence him for burglary under NRS 205.060(2).

_____, J.
Stiglich

We concur:

_____, J.
Cherry

_____, J.
Parraguirre