140 Nev., Advance Opinion 21

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| KIM A. JUDD,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 85734-COA<br><br> |

Appeal from a judgment of conviction, entered pursuant to a jury verdict, of one count of felony injuring or tampering with a motor vehicle and one count of felony coercion. Seventh Judicial District Court, Lincoln County; Gary Fairman, Judge.

*Affirmed in part, reversed in part, and remanded.*

Katschke Law, LLC, and Franklin J. Katschke, Panaca,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Dylan V. Frehner, District Attorney, Lincoln County,
for Respondent.

---

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

## OPINION

By the Court, BULLA, J.:

The consequences of criminal convictions vary widely between misdemeanors and felonies, including the potential terms of incarceration.

24-11087

And sometimes crimes—such as coercion—can be punished as either. Under NRS 207.190(2), criminal coercion is punishable as a felony if carried out using physical force or the immediate threat of physical force. However, absent the use or immediate threat of physical force, coercion is punishable as a misdemeanor. In this opinion, we consider whether NRS 207.190(2)'s use of the phrase "physical force" to distinguish between coercion being punished as a felony versus as a misdemeanor should be limited to physical force against a person, and not merely against property—in this case, a 1957 Chevrolet truck. Because we conclude that the Nevada Legislature intended for the distinguishing statutory element of "physical force" to be limited to force against a person, the jury should have been so instructed.

In reaching our decision, we emphasize the importance of giving proper jury instructions for the essential elements of a crime. Doing so is particularly important where, as here, the jury's consideration of the essential element of physical force, without proper instruction, resulted in a felony conviction. As the district court failed to properly instruct the jury on the definition of physical force as being limited to force against a person—the essential element required for a felony conviction—we necessarily reverse this conviction. However, we affirm the felony conviction for injuring or tampering with a motor vehicle, as the district court correctly instructed the jury as to the proper measure of damages for the partial destruction of property.

*FACTS AND PROCEDURAL HISTORY*

In 2020, Scott Reber purchased a 1957 Chevrolet truck. After having mechanical work completed on the truck to render it drivable, Reber dropped his truck off at the residence of a longtime acquaintance, appellant Kim A. Judd, for restoration and repair work to the truck's exterior. Reber

initially paid Judd about $1,000 for the repairs, but the two did not sign a formal agreement.

When the work was not completed several months later, Reber decided to retrieve his truck and have the work finished elsewhere. In a phone call, Judd refused to return the truck unless Reber paid Judd an additional sum for the repairs he had already made. Reber declined to pay more and told Judd he was coming to retrieve his truck. At this point, Judd retorted that if Reber came on to Judd's property, Judd would kill him. Thereafter, Judd continued to threaten Reber, stating in text messages that if Reber came to retrieve the truck, he would burn or damage the truck. Judd then struck the truck several times with a sledgehammer and sent Reber pictures of the damage. The following day, the sheriff accompanied Reber to Judd's residence to retrieve the truck.

The State charged Judd with one count of felony coercion and one count of felony injuring or tampering with a motor vehicle, and the case proceeded to trial. During the settling of jury instructions, Judd raised two objections. First, Judd objected to a proposed jury instruction setting forth the elements of felony coercion without defining "physical force." Specifically, as an alternative to the standard coercion instruction, Judd offered an instruction adopting the definition of physical force as set forth in NRS 193.303, which defines physical force as force used against "another person." In connection with Judd's request for this instruction, Judd orally requested dismissal of the felony coercion count because the State had failed to present evidence that either physical force or the immediate threat of

physical force had been used against Reber.[1] Second, Judd objected to the State's proposed jury instruction regarding the proper measure of damages. The State argued that because the truck was only partially damaged the proper measure of damages was the cost to repair or replace the damaged parts. Conversely, Judd argued for an instruction that the proper measure of damages was the fair market value of each individual part at the time of the damage, the total of which he asserted had to be less than the value of the truck when Reber dropped it off, or less than $5,000. The district court denied Judd's motion to dismiss, refused Judd's proposed instructions, and specifically declined to give an instruction defining "physical force." The jury found Judd guilty on both felony counts, and Judd was sentenced to a maximum of 48 months in prison on each count, to run concurrently. This appeal followed.

Judd challenges his convictions on several grounds, and we address two in this opinion. First, we agree with Judd's argument that, with respect to the felony coercion charge, the district court erred in failing to give a jury instruction defining "physical force" as being limited to force against a person, and therefore we necessarily reverse the felony coercion conviction. But second, as to the charge of injuring or tampering with a motor vehicle, we conclude that the district court correctly instructed the jury on the proper measure of damages applicable to the partial destruction

---

[1]To the extent that Judd contends the district court erred in denying his oral motion to dismiss at the close of the State's case, we note that no statutory authority permits a motion to dismiss during a criminal trial for insufficient evidence, and therefore the district court did not err in denying Judd's motion. *Cf.* NRS 175.381(1) ("If, at any time after the evidence on either side is closed, the court deems the evidence insufficient to warrant a conviction, it may advise the jury to acquit the defendant, but the jury is not bound by such advice.").

of property. Thus, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## ANALYSIS

*The district court committed reversible error when it failed to instruct the jury that NRS 207.190(2)'s use of the phrase "physical force" is limited to force against a person*

NRS 207.190 sets forth the crime of coercion and provides that

1. It is unlawful for a person, with the intent to compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing, to:

(a) Use violence or inflict injury upon the other person or any of the other person's family, or upon the other person's property, or threaten such violence or injury;

. . . ; or

(c) Attempt to intimidate the person by threats or force.

2. A person who violates the provisions of subsection 1 shall be punished:

(a) Where physical force or the immediate threat of physical force is used, for a category B felony by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and may be further punished by a fine of not more than $5,000.

(b) Where no physical force or immediate threat of physical force is used, for a misdemeanor.

Although Judd does not challenge the elements of coercion set forth in NRS 207.190(1), he contests his felony conviction under the statute. To convict Judd of felony coercion under NRS 207.190, the State was required to prove an additional element as set forth in subsection 2: the use of "physical force or the immediate threat of physical force." Judd contends

that the district court erred when it failed to instruct the jury that "physical force," as used in NRS 207.190(2), is limited to force against a person.

Specifically, Judd argues that the district court should have adopted his proposed jury instruction that applied the definition of "physical force" from NRS 193.303. That provision, located within the general section of criminal statutes governing the use of force by peace officers, states that "'[p]hysical force' means the application of physical techniques, chemical agents or weapons to *another person*." (Emphasis added.) Alternatively, Judd proposes that the district court should have given an instruction that physical force or threat of physical force must be used against a person. And since the evidence at trial did not establish the requisite physical force against a person, Judd contends the district court should have dismissed that felony charge. The State counters that Judd's proposed jury instruction would have misstated the law, asserting that NRS 207.190(2)'s plain language and legislative history support the conclusion that "physical force" includes the use of force against both persons and property.[2]

We review a district court's refusal to issue a jury instruction for an abuse of discretion or judicial error, but we review whether a proffered instruction correctly states the law de novo. *Nay v. State*, 123

---

[2]We do not necessarily agree that Judd's proposed instruction incorporating language from NRS 193.303 should have been the exact instruction given in this case, but we recognize that Judd's primary argument is that an instruction should have been given to define physical force or threat of physical force as being against a person and not merely property. We note that the district court has the ultimate responsibility of ensuring that the jury is properly instructed. *See Crawford v. State*, 121 Nev. 744, 754-55, 121 P.3d 582, 589 (2005) ("And in the final analysis, the district court is ultimately responsible for not only assuring that the substance of the defendant's requested instruction is provided to the jury, but that the jury is otherwise fully and correctly instructed.").

Nev. 326, 330, 167 P.3d 430, 433 (2007). In this case, we must first determine whether "physical force" as used in NRS 207.290(2), which distinguishes felony coercion from misdemeanor coercion, requires force or the immediate threat of force to be used against a person. Thus, to resolve whether the district court abused its discretion or erred in failing to give an instruction that "physical force" must be against a person, we necessarily consider whether such an instruction encompasses a correct statement of the law based on legislative intent.

Our "starting point for determining legislative intent is the statute's plain meaning." *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). However, "when 'the statutory language lends itself to two or more reasonable interpretations,' the statute is ambiguous," and this court will "look to the legislative history [to] construe the statute in a manner that is consistent with reason and public policy." *Id.* (quoting *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004)); *see also Jones v. Nev., State Bd. of Med. Exam'rs*, 131 Nev. 24, 28, 342 P.3d 50, 52 (2015) ("Because the statute does not define [the disputed term] and the parties each advance a different definition, we may look beyond the plain meaning of the statute . . . ."). Further, "[p]enal statutes should be narrowly construed where they are ambiguous."[3] *Romero v. State*, 116 Nev. 344, 348, 996 P.2d 894, 897 (2000).

---

[3]We note that the phrase "physical force" is considered a legal term of art that has different meanings in different statutory contexts. *Compare Johnson v. United States*, 559 U.S. 133, 141 (2010) (holding that the phrase "physical force" as used in the Armed Career Criminal Act refers to "force capable of causing physical pain or injury to another person"), *with United States v. Castleman*, 572 U.S. 157, 163 (2014) (holding that a federal statute's use of the phrase "physical force" when setting out a "misdemeanor crime of domestic violence" includes "even the slightest offensive touching").

NRS 207.190 does not define "physical force." And in this case, the parties each ascribe different reasonable meanings to the phrase. Under the State's reading, NRS 207.190(2)'s inclusion of "physical force" pertains to all conceivable types of physical force against persons or property based on the elements of coercion set forth in NRS 207.190(1)(a). While the State acknowledges that the phrase "physical force" is not included in NRS 207.190(1)(a), the State interprets NRS 207.190(2) to mean that if a defendant uses *any* physical force to accomplish the actions set forth in NRS 207.190(1)(a) (e.g., violence against persons or property), then the crime is punishable as a felony. Judd conversely interprets NRS 207.190(2)'s use of "physical force" to be a separate element required for felony coercion and asserts it should be interpreted as physical force *only* against a person. With this interpretation, Judd seeks to distinguish felony coercion from misdemeanor coercion, as both felony and misdemeanor coercion encompass the same elements set forth in NRS 207.190(1). Judd relies on the narrower definition of "physical force" in NRS 193.303 to support his argument that physical force must be against a person. *See Jones*, 131 Nev. at 28, 342 P.3d at 52 (explaining that reasonable interpretations may draw from "analogous statutory provisions"). Because "physical force" bears two reasonable interpretations in the context of the statute, the phrase is ambiguous. *See id.* Thus, we next turn to the statute's legislative history for additional insight.

In 1967, the Legislature added "physical force" as a required element of felony coercion under NRS 207.190. *See* A.B. 71, 54th Leg. (Nev. 1967). The Legislature amended NRS 207.190 again in 1995 under S.B. 416, 68th Leg. (Nev. 1995), which classified all felony crimes under a letter-coded felony scheme—category A felonies being the most serious and

carrying the longest potential sentences. The bill classified felony coercion as a category B felony—the category containing the second-most serious felonies—which is how the crime remains classified today. *See id.*; NRS 207.190(2).

In classifying felonies, the Legislature relied, in part, on a report produced by the Nevada Department of Prisons detailing the average sentence imposed and average time served for crimes separated by the putative letter-coded tiers. *See* Hearing on S.B. 416 Before the Assemb. Comm. on Judiciary, 68th Leg., at 757, 775 (Nev., May 17, 1995). That report delineated felony coercion as a "serious crime" and category B felony based on prior putative lists, as well as on the department's own categorization of the crimes based on their elements. *Id.* at 773, 775. Within this list, the only other "serious crime" listed as a category B felony that also required physical force as a necessary element was felony battery, which limited the use of physical force to force against another *person*.[4] *See id.* at 775; *Hobbs v. State*, 127 Nev. 234, 238-39, 251 P.3d 177, 180 (2011) (explaining that the physical force required for battery includes "the intentional and unwanted exertion of force *upon another*" (emphasis added)). Because the Legislature viewed felony coercion and felony battery as similarly serious crimes when designating them as category B felonies, we conclude that it intended for the crimes' shared elements to carry the same meaning and, therefore, for felony coercion's requirement of "physical

---

[4]During oral argument, the State suggested that extortion under NRS 205.320(2) punishes threats to injure property with the intent to gain money as a category B felony. But unlike extortion, coercion requires the use of physical force or the immediate threat of physical force as a necessary element of the felony crime. Moreover, as the State duly noted, it did not charge Judd with extortion.

force" to only include force against a person. *See Savage v. Pierson*, 123 Nev. 86, 94, 157 P.3d 697, 702 (2007) ("[W]hen the same word is used in different statutes that are similar with respect to purpose and content, the word will be used in the same sense, unless the statutes' context indicates otherwise . . . ."). Thus, although "physical force" in NRS 207.190(2) is not defined as force against a person, we conclude that the legislative history supports Judd's position that it was intended to be, contrary to the State's position. We also note that the only reference to "force" in NRS 207.190(1) involves coercion by "[a]ttempt[ing] to intimidate the *person* by threats or force." *See* NRS 207.190(1)(c) (emphasis added).

Interpreting felony coercion to require the use of physical force (or the immediate threat of physical force) against a person, and not merely against property, is both reasonable and avoids absurd results. *See State v. Quinn*, 117 Nev. 709, 713, 30 P.3d 1117, 1120 (2001) (explaining that a reviewing court's interpretation of an ambiguous statute "should be in line with what reason and public policy would indicate the [L]egislature intended, and should avoid absurd results" (quoting *Gallagher v. City of Las Vegas*, 114 Nev. 595, 599-600, 959 P.2d 519, 521 (1998))). For example, under the State's proposed reading of the coercion statute, a defendant would be guilty of *felony* coercion if they used physical force or immediately threatened physical force against *any* personal property, even if the resulting damage would be less than $1.

The State, in its supplemental authorities on appeal, points to *Guerrina v. State*, where the Nevada Supreme Court observed in dicta, paraphrasing subsection 1 of the coercion statute, that "felony coercion consists of the use or immediate threat of violence or injury against a person or property, with 'the intent to compel another to do or abstain from doing

an act which the other person has a right to do or abstain from doing.'" 134 Nev. 338, 346, 419 P.3d 705, 712 (2018) (quoting NRS 207.190(1)). In *Guerrina*, however, the supreme court affirmed the defendant's felony coercion conviction because the defendant's immediate proximity to the victim, accompanied with a command to disconnect the phone, arose to "an immediate—albeit unspoken—threat of physical force" against the victim. *Id.* at 347, 419 P.3d at 713 (internal quotation marks omitted). In contrast to the facts in *Guerrina*, Judd and Reber were miles apart when Judd threatened him over the phone, and that threat carried no immediate threat of physical force against Reber's person, as Reber acknowledged at trial. Thus, the holding of *Guerrina* is unpersuasive in resolving the matter before us.

The State otherwise points to no controlling legal authority in this jurisdiction, nor do we find any, where a felony coercion conviction was affirmed based solely on the use of physical force or immediate threat of physical force against property with no accompanying use or immediate threat of force against the victim's person.[5] Further, to the extent any

---

[5]At oral argument, the State discussed *United States v. Edling*, 895 F.3d 1153 (9th Cir. 2018), where the United States Court of Appeals for the Ninth Circuit, in deciding whether a conviction for felony coercion was a "crime of violence" for federal sentencing purposes, looked to three unpublished orders by the Nevada Supreme Court affirming felony coercion convictions. Although those unpublished decisions involved defendants forcefully depriving victims of phones they were using to call law enforcement, the Ninth Circuit speculated that there was a "'realistic probability' that a defendant could be convicted of felony coercion without using or threatening to use violent physical force against the person of another" and therefore felony coercion under NRS 207.190 was not a "crime of violence" under federal sentencing guidelines. *Id.* at 1159 (quoting U.S. Sent'g Guidelines Manual § 4B1.2). We are not persuaded by the Ninth

lingering ambiguity as to the statutory requirement of "physical force" remains, the rule of lenity weighs in favor of Judd. Under the rule of lenity, if a penal statute remains ambiguous after exhausting all other methods of statutory interpretation, then the statute should be "interpreted in the accused's favor." *Lucero*, 127 Nev. at 99, 249 P.3d at 1230 (quoting *Moore v. State*, 122 Nev. 27, 32, 126 P.3d 508, 511 (2006)). Thus, the rule of lenity further supports our interpretation that the requirement of "physical force" under NRS 207.190(2) is limited to force against a person because this resolves any remaining ambiguity in Judd's favor.[6]

---

Circuit's conjecture. Of course, the use of such force could be directed to both property and a person, such as the use of physical force to grab a phone from a person's hand and destroy the phone to prevent a call to law enforcement. *See, e.g., Gramm v. State*, No. 72459, 2018 WL 679548, at *1 (Nev. Feb. 1, 2018) (Order of Affirmance) (affirming a conviction of felony coercion where the defendant hit a phone out of the victim's hand while the victim was trying to call the police). Thus, to establish felony coercion, there must be some temporal proximity between the intent to damage property and the victim such that a reasonable person under the same circumstances would feel immediately threatened by the use of physical force against their person. *See Santana v. State*, 122 Nev. 1458, 1462-63, 148 P.3d 741, 744-45 (2006). We also note that in *Barber v. State*, No. 77650, 2020 WL 3570435, at *1 (Nev. June 30, 2020) (Order of Affirmance), the supreme court expressly declined to address whether physical force requires force against a person for felony coercion because the issue was not preserved for appellate review and, therefore, affirmed a felony coercion conviction in an unpublished order based on the sufficiency of evidence where the defendant's actions of "cut[ting] the lines to the land line" and removing the battery from the victim's cell phone prevented the victim from calling for help.

[6]Indeed, when faced with a similar question—determining whether the language "threat of physical injury" in a criminal statute included threats to both property or a person, or solely to a person—the United States Court of Appeals for the Tenth Circuit relied, in part, on the rule of lenity to hold that the phrase only applied to threats of physical injury to a person.

Court of Appeals
of
Nevada

(O) 1947B

We therefore conclude that the district court erred in refusing to instruct the jury that "physical force" must be against a person, which is necessary to support the charge of felony coercion in accordance with NRS 207.190(2). Having concluded that the district court erred in failing to properly instruct the jury, we now determine whether that error was harmless. *See Nay*, 123 Nev. at 333-34, 167 P.3d at 435 (recognizing that harmless-error review applies to jury instruction errors). "[A]n error is harmless when it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* at 334, 167 P.3d at 435 (quoting *Wegner v. State*, 116 Nev. 1149, 1155, 14 P.3d 25, 30 (2000), *overruled on other grounds by Rosas v. State*, 122 Nev. 1258, 1267-68, 147 P.3d 1101, 1108 (2006) (further internal quotation marks omitted)).

At trial, Reber explicitly testified that Judd never used any physical force against him and that he did not feel he faced any "immediate threat of danger" when Judd, over the phone, threatened him and his property if he attempted to retrieve the truck because they were more than ten miles apart.[7] Under these facts, we cannot conclude beyond a reasonable doubt that a rational jury would have found Judd guilty of felony coercion for partially damaging Reber's truck had the district court properly instructed the jury on the definition of "physical force" as being against a person. Under these same facts, absent the district court's error in failing

---

*United States v. O'Connor*, 874 F.3d 1147, 1157-58 (10th Cir. 2017) ("[T]he rule of lenity counsels courts to interpret [ambiguous criminal statutes] to 'avoid an increase in the penalty prescribed for the offense.'" (quoting *United States v. Manatau*, 647 F.3d 1048, 1055 (10th Cir. 2011))).

[7]At oral argument, both parties agreed that, at the time Judd threatened Reber, they were approximately 10 to 15 miles away from each other.

to properly instruct the jury, a rational jury could have found a reasonable person in Reber's position would not have felt immediately threatened. *See Santana v. State*, 122 Nev. 1458, 1462-63, 148 P.3d 741, 744-45 (2006) (holding that, when determining whether a threat of physical force was immediate for the purposes of NRS 207.190(2), the factfinder must determine whether a reasonable person under the same circumstances would have felt immediately threatened). As we cannot conclude beyond a reasonable doubt that Judd would have been convicted of felony coercion had a proper instruction regarding physical force been given, we agree that the error was not harmless and necessarily reverse Judd's conviction of felony coercion.

*The district court properly instructed the jury on the appropriate measure of damages*

Generally, the criminal charge of injuring or tampering with a motor vehicle is punishable according to the extent of the property damage caused.[8] At trial, the State offered expert testimony to support a felony conviction for the damage Judd caused to Reber's truck. Ronald Lourenco, the owner of an autobody shop that provided Reber with an estimate of the cost to repair the exterior damage to the truck Judd caused, testified that the damaged exterior parts were not repairable and required replacement. Lourenco also testified that he could not find original parts for the 1957 Chevrolet truck for sale—new or used—and therefore had to order replica

---

[8]Under NRS 205.274(1), it is unlawful to damage the motor vehicle of another. If the cost of the damage to the motor vehicle is $5,000 or more, then the defendant is guilty of a category C felony. NRS 193.155(1) (setting forth the level of culpability for public offenses "proportionate to the value of property affected"). If the cost of that damage is more than $250 but less than $5,000, the defendant is guilty of a gross misdemeanor. NRS 193.155(2).

parts. The shop's estimate costs for these replica parts totaled $17,594.80. Judd offered no evidence of the parts' replacement value to the contrary. Rather, Judd argued that each damaged part should be treated as its own loss and, therefore, the proper measure of damages would be the combined fair market value for each individual part at the time the damage occurred. Judd asserts that this total had to be less than $5,000 because Reber testified that the total value of the truck was less than $5,000 when he purchased it. The jury ultimately found that the measure of damages was $5,000 or more, and Judd was therefore convicted of a felony for the damage he caused.

On appeal, Judd essentially reargues his position below, that the district court should not have instructed the jury that the proper measure of damages was the cost to repair or replace its damaged parts, but rather, the fair market value of each part at the time it was damaged. Judd contends that the damaged exterior parts were not permanently affixed to the truck and, therefore, each individual part should be considered its own loss, thereby making the proper measure of damages the total fair market value of the individual parts. The State counters that the district court properly found that the truck, as a whole, was partially damaged and not a total loss. Therefore, the district court correctly instructed the jury that the measure of damages was the cost to repair or replace the parts necessary to restore the truck. We agree with the State.

In *Romero v. State*, the Nevada Supreme Court set forth two standards for calculating property damage when determining a criminal defendant's culpability based on the extent of the damage. 116 Nev. at 346-49, 996 P.2d at 896-98. When property is "completely destroyed," the appropriate standard is the fair market value of the property at the time it

was destroyed. *Id.* at 348, 996 P.2d at 897. "However, when property is only partially destroyed," "the appropriate measure of damages is the cost related to repair or restore the property." *Id.* Under the latter method, the damage must be directly tied to the offense. *Id.* at 349, 996 P.2d at 897 (holding that the costs of hiring security following an incident were not directly tied to property damage at a store).

In this case, Judd partially destroyed Reber's 1957 Chevrolet truck by damaging individual exterior parts. Even though these parts were not permanently affixed to the truck's frame, they had to be replaced—as they could not be repaired—to restore the truck to its condition before Judd partially damaged it. Thus, the proper measure of damages was the cost to repair or replace the damaged parts. *See Romero*, 116 Nev. at 348, 996 P.2d at 897. Based on the uncontroverted expert testimony at trial, we conclude that the invoice of $17,594.80 for the replica replacement parts was directly tied to the offense charged and represented the amount necessary to restore the partially damaged truck.

Therefore, the district court correctly instructed the jury on the proper measure of damages for the partial damage Judd caused to Reber's 1957 Chevrolet truck. And, based on the replacement value of the replica parts necessary to restore the truck, we affirm Judd's felony conviction of injuring or tampering with a motor vehicle causing damage of $5,000 or more.[9]

---

[9]We have considered other arguments raised by Judd on appeal, including that the district court improperly allowed the State to amend the information after the start of trial; abused its discretion in denying his request to remove a juror for misconduct; and erred in denying his motions to set aside the conviction and conduct a competency evaluation and to

## CONCLUSION

We affirm Judd's felony conviction for injuring or tampering with a motor vehicle because the district court correctly instructed the jury on the proper measure of damages. However, we conclude that to affirm a conviction of felony coercion, physical force or the immediate threat of physical force must have been used against a person, not merely against property. Therefore, the district court erred in rejecting a jury instruction defining physical force or immediate threat of physical force as being against a person. We further conclude that this error was not harmless. Accordingly, we reverse Judd's conviction of felony coercion and remand for further proceedings consistent with this opinion.

_____, J.
Bulla

We concur:

_____, C.J.
Gibbons

_____, J.
Westbrook

---

remove his attorney and conclude that they do not present a basis for further relief.

COURT OF APPEALS
OF
NEVADA

(O) 1947B